UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| PROSLIDE TECHNOLOGY INC., | |
| Plaintiff, | |
| v. | Case No.: 6:20-cv-02189-CEM-DCI |
| WHITEWATER WEST INDUSTRIES, LTD., | |
| Defendant. | |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

In accordance with the Case Management Order (Doc. 35), Plaintiff ProSlide Technology, Inc. ("ProSlide") submits this brief in support of its proposed claim constructions presented in the Joint Claim Construction Statement (Doc. 53).

## I.   BACKGROUND

### A.   The Patents at Issue

This case involves four utility patents (Exs. 1–4) and four design patents (Exs. 5–8), each directed to unique aspects of ProSlide's innovative waterslide technology and aesthetic designs.[1] The design of a waterslide—especially one that will be used in a commercial water park or theme park—involves a careful balance of engineering and aesthetics to achieve a ride experience that is not only thrilling and unique for the rider

---

[1] U.S. Patent Nos. 10,702,783 ("the '783 patent"), 10,500,508 ("the '508 patent"), 9,079,111 ("the '111 patent"), 10,369,480 ("the '480 patent") (collectively, "the Asserted Utility Patents"), and U.S. Patent Nos. D901,613 ("the '613 patent"), D892,960 ("the '960 patent"), D903,804 ("the '804 patent"), and D919,732 ("the '732 patent") (collectively, "the Asserted Design Patents").

but also safe, visually distinctive, and conducive to the high customer throughput that is typical in most large entertainment venues.

Each of the eight patents in this case was carefully reviewed by a highly trained Patent Examiner at the U.S. Patent & Trademark Office ("USPTO") and was duly issued as a U.S. patent following this thorough examination.

### B.   Procedural Background

In accordance with the Case Management Order (Doc. 35), the parties exchanged lists of disputed claim terms and then exchanged proposed constructions for those disputed terms. As shown in the Joint Claim Construction Statement (Doc. 53), the parties agree on the construction of one term but dispute the remaining 47 terms. Of those 47 disputed terms, Defendant WhiteWater West Industries, Ltd. ("WhiteWater") has proposed constructions only for *six* (two in the utility patents and four in the design patents). For the remaining 41 disputed terms, WhiteWater asserts only that each is "Indefinite under [35 U.S.C.] § 112." (*Id.*)

## II.   STATEMENT OF LAW

### A.   General Claim Construction Principles

Claim interpretation is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Generally, the words in a patent claim should be given "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. If the meaning of a claim term is not immediately apparent, the Court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.*; *see also Global Tech LED v. HiLumz Int'l Corp.*, No. 2:15-cv-553-FtM-29CM, 2017 U.S. Dist. LEXIS 77809 at *8–12 (M.D. Fla. May 23, 2017) (explaining the hierarchy of evidence that may be used in claim construction).

Of highest importance is the claim language itself. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998) ("Even within the intrinsic evidence . . . there is a hierarchy of analytical tools. The actual words of the claim are the controlling focus."); *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305 (Fed. Cir. 1999).

Next, the court reviews the patent's specification, which includes the written description and drawings. *Phillips*, 415 F.3d at 1315–16. "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases the inventor's lexicography governs." *Id.* at 1316.

At the bottom of the intrinsic evidence hierarchy lies the patent's prosecution history, which "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at

1317. The prosecution history provides insight into "how the PTO and the inventor understood the patent." *Id.* On the other hand, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1317.

"[I]f after consideration of the intrinsic evidence there remains doubt as to the exact meaning of the claim terms, consideration of extrinsic evidence may be necessary to determine the proper construction." *Digital Biometrics*, 149 F.3d at 1344. Appropriate sources include "expert testimony, dictionaries, and treatises." *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1361 (Fed. Cir. 2014); *see also Markman*, 52 F.3d at 980. Although the extrinsic evidence "can shed useful light on the relevant art" *Vanderlande Indus. Nederland BV v. I.T.C.*, 366 F.3d 1311, 1318 (Fed. Cir. 2004), it should always be "considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.

## B.     Construing Design Patent Claims

### 1.     Design Patent Claim Construction Standard

A design patent differs from a utility patent in several respects. Whereas a utility patent claims "any new and useful process, machine, manufacture, or composition of matter," 35 U.S.C. § 101, a design patent may be obtained for "any new, original and ornamental design for an article of manufacture," 35 U.S.C. § 171. A design patent thus protects the ornamental features—essentially, the appearance—of the patented design. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

Claim construction differs between utility and design patents. Unlike construction of utility patent claims, which focuses on technical words, construction

of a design patent claim focuses on drawings. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc). Although there is no particular form that the claim construction must take in design patent cases, the Federal Circuit has provided the following guidance:

> [I]t should be clear that the court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful. In addition, in deciding whether to attempt a verbal description of the claimed design, the court should recognize the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole.

*Id.* at 679–80.

The Federal Circuit has cautioned that "a design is better represented by an illustration than it could be by any description." *Id.* (citation and internal quotation marks omitted). Thus, "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.*; *see also Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("This court has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case.") (citing *Egyptian Goddess*, 543 F.3d at 679). In other words, the "court should let the images of the claimed designs and accused products speak for themselves and should generally limit its verbal interpretation of the visual depictions of the claimed designs so as not to detract from the overall impression created by the claimed designs." *Hunter's Edge, LLC v. Primos, Inc.*, No. 1:14-CV-00249-MHT-WC, 2015 WL 5692738 at *4 (M.D. Ala. Sept. 8, 2015).

## 2.    Functionality and Design Patent Scope

The Federal Circuit has emphasized that the claimed design and the article of manufacture that the design is applied to are distinct. *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) ("The function of the article itself must not be confused with 'functionality' of the design of the article"). The fact that the underlying article of manufacture serves a function has no bearing on either the validity or the claim construction of the claimed design. Indeed, "the fact that the article of manufacture serves a function is a *prerequisite* of design patentability, not a defeat thereof." *Id.* (emphasis added); *see also L.A. Gear*, 988 F.2d at 1123 ("An article of manufacture necessarily serves a utilitarian purpose[.]").

While some courts have highlighted ornamental aspects of claimed designs, they have steered away from using claim construction to eliminate elements from the claimed design as functional. *See Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321–22 (Fed. Cir. 2016) (holding the district court's construction was erroneous "because it eliminate[d] whole aspects of the claimed design"); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334 (Fed. Cir. 2015) (reversing district court's claim construction that factored out elements as purely functional). Thus, while a court can assist the factfinder in distinguishing between functional and ornamental features, "in no case [should it] entirely eliminate a structural element from the claimed ornamental design, even though that element also serve[s] a functional purpose." *Sport Dimension*, 820 F.3d at 1321.

The standard for finding that the appearance of a design is dictated by function is "stringent." *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002). Although courts have considered a number of factors related to functionality, the "availability of alternative designs [that accomplish the same functionality] is 'an important—if not dispositive—factor in evaluating the legal functionality of a claimed design.'" *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706-LPS, 2019 WL 6840357, at *3 (D. Del. Dec. 16, 2019) (quoting *Ethicon*, 796 F.3d at 1329-30; *L.A. Gear*, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.").

## C.    Indefiniteness

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). A claim is invalid for indefiniteness if its language, viewed in light of the specification and prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). This standard requires that "a patent . . . be precise enough to afford clear notice of what is claimed, . . . while recognizing that absolute precision is unattainable." *Nautilus*, 572 U.S. at 909–10. It is well settled that every duly issued patent is presumed to be valid, *see* 35 U.S.C. § 282(a), so an invalidity defense, such as indefiniteness, must be proved by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

As set forth in ProSlide's Motion to Defer Defendant's Premature Indefiniteness Arguments (Doc. 51), rulings on indefiniteness at the *Markman* stage are discouraged. *See* Doc. 51 at 5–7. The Court may thus properly decline to consider WhiteWater's indefiniteness challenges during this claim construction proceeding. *Id.* If the Court does consider WhiteWater's indefiniteness arguments, ProSlide should be given an opportunity to respond to those arguments in a reply brief.

## III.   UNDISPUTED CLAIM CONSTRUCTIONS

The parties have agreed on the following claim construction (Doc. 53):

| '111 Patent Claim | Claim Term | Agreed Construction |
|---|---|---|
| 2 | the sliding surface is open-sided | the sliding surface having no walls or channels to guide the one or more riders and/or ride vehicles. |

## IV.   DISPUTED CLAIM CONSTRUCTIONS FOR THE ASSERTED UTILITY PATENTS

### A.     "[T]he sliding surface has an open side" ('111 Patent)

| '111 Patent Claim | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 6 | the sliding surface has an open side | the sliding surface having no walls or channels to guide the riders and/or ride vehicles. | the sliding surface is not enclosed such that the sliding surface has an edge forming a rim of the water slide feature. |

As noted above, the parties agree that an "open-sided" sliding surface, as recited in claim 2, is one that "ha[s] no walls or channels to guide the one or more riders and/or ride vehicles." Doc. 53. This is clearly explained in the specification of the '111 patent, which describes a sliding surface in Figure 1 that "is smooth and **open-sided** such that the rider can potentially ride over any part of the sliding surface 12. This is

in contrast to a flume ride which includes walls or channels to guide the rider along a predetermined path." Ex. 3 at 4:48–52 (emphasis added). Thus, the large, smooth, concave sliding surface 12 is an example of an "open-sided" sliding surface, whereas the inlet 14 and outlet 16 are each described as "a flume (either open or enclosed)." As the patent explains, an "open-sided" sliding surface gives the rider freedom to travel along various paths, whereas a flume has walls that dictate a confined path. All of this is undisputed with respect to dependent claim 2.



FIG. 1

Dependent claim 6 recites: "The water slide feature of claim 1, wherein *the sliding surface has an open side* that is angled to the horizontal between 0 and 90 degrees." *Id.* at 9:59–61 (emphasis added). Because the terms "open-sided" (claim 2) and "open side" (claim 6) are essentially identical, ProSlide believes they should be given the same construction. WhiteWater, on the other hand, proposes a very different construction for "open side" in claim 6 than for "open-sided" in claim 2. Specifically, WhiteWater seeks to add limitations to claim 6 requiring that "the sliding surface is not enclosed" and has "an edge forming a rim of the water slide feature." Neither of these features is recited in claim 6 or required by the intrinsic evidence. Therefore, WhiteWater's construction should be rejected as legally improper.

Claim construction begins with the claim language itself. Here, claim 6 does not

expressly recite a sliding surface that is "not enclosed" or that has "an edge forming a rim." Rather, those are *extraneous* features that WhiteWater is attempting to import into claim 6 via claim construction. That is improper. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993) ("It is improper for a court to add 'extraneous' limitations to a claim, that is, limitations added wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim.") (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988)). Simply put, there is nothing in claim 6 that requires the sliding surface to be "not enclosed" or to have an "edge forming a rim."

"Other claims of the patent in question . . . can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314. Here, dependent claim 2 adds the following limitation to claim 1: "wherein the sliding surface is *open-sided*." Ex. 3 at 9:51–52 (emphasis added). The parties agree this means the sliding surface has "no walls or channels to guide the one or more riders and/or ride vehicles." Doc. 53. Thus, as both parties agree, "open-sided" has nothing to do with whether the sliding surface is enclosed or has "edges." In contrast, dependent claims 3 and 4 contain other limitations that address whether the slide surface is enclosed or non-enclosed. Dependent claim 3 recites "wherein the water slide feature is *open topped*," and dependent claim 4 recites "wherein the water side feature is at least *partially enclosed*." Ex. 3 at 9:53–56 (emphasis added). Thus, when the inventor intended to limit the sliding surface to a non-enclosed sliding surface, he used the term "open topped"—*not* "open-sided" or having an "open side."

Claim 6 recites that "the sliding surface has an open side that is angled to the horizontal between 0 and 90 degrees." *Id.* at 9:59–61. The term "open side" in this claim is nearly identical to claim 2's requirement of a sliding surface that is "open-sided." Because these terms are essentially identical, a person of ordinary skill in the art would understand them to have the same meaning. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) ("The fact that we must look to other claims using the same term when interpreting a term in an asserted claim mandates that the term be interpreted consistently in all claims."); *Phillips*, 415 F.3d at 1314.

WhiteWater may try to raise the doctrine of "claim differentiation," which "creates a presumption that each claim in a patent has a different scope." *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000). Specifically, it may contend that "open side" must be construed differently than "open-sided" in order to differentiate claim 6 from claim 2. That is incorrect. Regardless of the construction of "open side," claim 6 is fully differentiated in scope from claim 2 because it further requires that the open side "is angled to the horizontal between 0 and 90 degrees." Claim 2 contains no such limitation. Thus, the claim-differentiation doctrine does not require that "open side" be construed differently than "open-sided." *Kraft Foods,* 203 F.3d at 1368 ("[T]hat the claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that at least one limitation must differ."); *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016) ("[W]e have declined to apply the doctrine of claim differentiation where, as here, the claims are not otherwise identical in scope.").

11

Turning to the specification, as already discussed, the '111 patent explains that an "open-sided" sliding surface is one in which "the rider can potentially ride over any part of the sliding surface . . . in contrast to a flume ride which includes walls or channels to guide the rider along a predetermined path." Ex. 3 at 4:48–52. Nothing in the specification suggests that "open side" has a different meaning than this undisputed meaning of "open-sided." *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1373 (Fed. Cir. 2014) ("[T]o deviate from the plain and ordinary meaning of a claim term to one of skill in the art, the patentee must, with some language, indicate a clear intent to do so in the patent."). WhiteWater cannot point to anything in the specification that indicates a "clear intent" to define "open side" differently than "open-sided." *Id.*

WhiteWater may attempt to point to specific embodiments of the invention that are described as having a sliding surface with an "edge" "angled relative to the level ground." Ex. 3 at 6:57–59. But the Federal Circuit has repeatedly cautioned courts not to unduly narrow claim terms based on specific embodiments disclosed in the specification. "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323 (internal citations omitted). Thus, any attempt by WhiteWater to construe "open side" differently than "open-sided" based on figures or embodiments in the patent should be rejected as an improper attempt to import limitations from the specification into the claim. *See Kara Tech, Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the

full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

For the reasons explained above, the Court should adopt ProSlide's proposed construction of "open side," which *both parties agree* is the correct construction for the nearly identical term "open-sided."

**B.**   **"[T]he entry is sized and positioned to direct the one or more riders and/or ride [vehicles] on a path which intersects itself on the sliding surface" ('480 Patent)**

| '480 Patent Claim | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 6 and 7 | the entry is sized and positioned to direct the one or more riders and/or ride [vehicles] on a path which intersects itself on the sliding surface | Plain and ordinary meaning, i.e., the entry is sized and positioned to direct the one or more riders and/or ride [vehicles] on a path which crosses over itself on the sliding surface. | the entry is sized and positioned to direct the one or more riders and/or ride [vehicles] on a path that crosses over itself physically at a given point on the sliding surface. |

The parties largely agree about the construction of this term but disagree about one detail. Specifically, although both parties agree this limitation requires a ride path that "crosses over itself" "on the sliding surface," WhiteWater contends it also requires, more specifically, a ride path that "crosses over itself *physically at a given point* on the sliding surface." The extraneous phrase "physically at a given point" should not be included in the construction because it will likely confuse the jury and because it implies that the intersection must occur at a *pre-determined* or *certain* point, contrary to the intrinsic evidence.

13

Beginning with the claim language, claims 6 and 7 require that the riders and/or ride vehicles are directed "on a path which intersects itself on the sliding surface." Ex. 4 at 10:24–29. Nothing in this phrase requires that the intersection take place "physically at a given point." Instead, it requires only that the intersection take place *somewhere* "on the sliding surface."

WhiteWater may argue that "physically at a given point" simply clarifies that the ride path must intersect itself on the same surface, as opposed to crossing over itself at a different elevation like a highway overpass. But this requirement is already reflected in the phrase "on the sliding surface," which appears in both parties' constructions. For instance, ProSlide's construction makes clear that the ride path "crosses over itself *on the sliding surface*." Doc. 53 (emphasis added). Thus, it is already clear that the ride path in dependent claims 6 and 7 must intersect itself *on that surface*. Adding the phrase "physically at a given point" is unnecessary and would only serve to confuse the jury—raising more questions than it answers.

Turning to the '480 patent's specification, WhiteWater cannot point to anything in the specification that requires "physically at a given point" to be read into the claims. Indeed, this phrase is never used in the '480 specification. Moreover, the patent emphasizes that "the sliding surface is smooth and open-sided such that the rider can potentially ride over *any part of the sliding surface*, in contrast to a flume ride. Ex. 4 at 4:50–54 (emphasis added). This means the ride path need not intersect itself at any particular or "given" point but instead can intersect at a point that varies from rider to rider.

14

Because WhiteWater cannot find any support for its construction in the '408 patent, it has signaled that it intends to rely on the specification of a *different patent*, the '508 patent. Specifically, WhiteWater apparently intends to rely on a sentence in the '508 patent, which states (referring to Figure 11a): "When viewed in plan view, there is a point 1180 where the entry chute 1104 and the exit chute 1106 visually, but not physically, intersect." Ex. 2 at 14:9–11. Putting aside that this sentence appears in *different patent* directed to a *different invention*, it still does not support WhiteWater's proposed construction. As explained above, the



FIG. 11A

claim language at issue here refers to a ride path that intersects "on the sliding surface." In contrast, the "visual" intersection in the '508 patent refers to an entry chute 1104 that crosses over an exit chute 1106 like a highway overpass. These are different concepts. Contrary to WhiteWater's assertion, there is no need to distinguish "physical" from "visual" intersection in the disputed claim language because the words "on the sliding surface" already make this clear. WhiteWater's attempt to clarify something that does not need clarification would only serve to confuse the jury and risk unduly narrowing the claim.

For the reasons explained above, the Court should adopt ProSlide's proposed construction of this term and reject WhiteWater's attempt to read in "physically at a given point."

### C.    Terms Alleged to Be Indefinite

WhiteWater has identified 41 terms in the utility patents as allegedly being indefinite. Doc. 53. It provides no proposed constructions for these terms, other than to allege they are indefinite. *Id.* ProSlide believes these terms are not indefinite and do not require construction because their meanings would be readily apparent to a jury. The Federal Circuit has held that "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction "is not an obligatory exercise in redundancy.").

Although the court has an obligation to resolve claim construction disputes where both parties present competing constructions, *O2 Micro*, 521 F.3d at 1361–62, in situations like this, where one party argues indefiniteness and the other party contends no construction is necessary, the court may decline to construe the claims and instead adopt the ordinary meaning. *See, e.g., Diebold Nixdorf, Inc. v. Hyosung TNS, Inc.*, No. 19-1695-LPS, 2021 WL 678672, *5 (D. Del. Feb. 22, 2021) ("Having found the claims not indefinite, the Court further finds there is no need to construe the terms. They are used consistent with their plain and ordinary meaning, and Defendants provided no competing constructions.") (citing *U.S. Surgical*, 103 F.3d at 1568); *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, No. 17-cv-2724, 2019 WL 7161687, *15 (E.D. Pa. Dec. 23, 2019) ("[T]he Court finds that each of the terms for which Nuna alleges

indefiniteness should be construed according to its plain and ordinary meaning, which is ascertainable in the context of the patent language.").

None of the 41 terms WhiteWater challenges is indefinite because each has a meaning that is reasonably clear to a person of ordinary skill in the art in light of the specification and prosecution history. *Nautilus*, 572 U.S. at 901. Although space does not permit addressing all 41 disputed claim terms here, the first two should suffice to show the weakness of WhiteWater's indefiniteness arguments:

| '111 Patent Claim(s) | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 1, 13, 18, and 19 | a non-predetermined path | Plain and ordinary meaning, i.e., a path that is not determined beforehand | Indefinite under § 112 |
| 1, 18, and 19 | from an entry to an exit | Plain and ordinary meaning, i.e., from an entry to an exit | Indefinite under § 112 |

Doc. 53.

WhiteWater asserts that "a non-predetermined path" is indefinite, yet its meaning is clear from the words themselves—it is a path that is not determined beforehand, such that it may vary from rider to rider. Again, this is in contrast to a flume ride. The '111 specification explains this very clearly. *See* Ex. 3 at 9:5–9 ("The path of the rider is substantially determined by the curvature of the sliding surface 712 as well as characteristics of the rider or vehicle such as weight and weight distribution, such that the path the rider or vehicle will travel over the surface 712 is ***non-predetermined** and may vary from rider to rider*.") (emphasis added). Because this term is

readily understandable to a person skilled in the art (and to a layperson), it is not indefinite and requires no construction.

WhiteWater also asserts that "from an entry to an exit" is indefinite, even though it consists of simple words that are readily understandable to any English speaker. As the patent explains, "Waterslide 10 includes a sliding surface 12, and entry 14 to the sliding surface 12 and an exit 16 from the sliding surface 12."   Ex. 3 at 3:31–34. A person of ordinary skill in the art (and a layperson) would readily understand what it means for a waterslide to carry riders and/or ride vehicles along a path "from an entry to an exit."



FIG. 1

The rest of WhiteWater's indefiniteness challenges are similarly weak. Accordingly, the Court should decline to construe these terms and instead adopt their ordinary meanings. But if the Court believes a construction is needed for any of these terms, it should adopt ProSlide's alternative proposed constructions. *See* Doc. 53.

## V.   DISPUTED CLAIM CONSTRUCTIONS FOR THE ASSERTED DESIGN PATENTS

### A.   The Asserted Design Patents

The underlying articles of manufacture illustrated by the asserted design patents are water rides that can be installed in water parks, theme parks, hotels, and other entertainment facilities. These water rides have been used in connection with commercial products, including ProSlide's RallyRACER water ride. Doc. 41, ¶ 12.

### 1. The '804 Patent

The '804 patent has a single claim, claiming the ornamental design for a water ride, as shown and described in Figures 1–7. Ex. 7. Figure 1 (right) provides an exemplary perspective view of a water ride showing the claimed design. Ex. 7 at Fig. 1. As the prosecution history makes clear, "[t]he portions shown in broken lines do not form part of the design. The



**FIG. 1**

lines consisting of short and long dashed do not form part of the design and are included solely for the purpose of illustrating the boundary of the design." Ex. 9 at 7, 12. Thus, the appropriate construction for the '804 patent is "[t]he ornamental design for a water ride, shown in the solid lines in Figures 1–7 and described in the specification." Doc. 53. *See Reddy v. Lowe's Cos.*, 60 F.Supp.3d 249, 255, 260 (D. Mass. 2014) (adopting a similar construction for a design patent claim and rejecting "Defendants' proposed construction, which focuses attention on a list of specific elements rather than the overall design presented in the figures . . . .").

### 2. The '613 Patent

The '613 patent has a single claim, claiming the ornamental design for a water ride, as shown and described in Figures 1–21. Ex. 5. Figure 1 (right) provides an exemplary perspective view of a water ride showing the claimed design. Ex. 5 at



**FIG. 1**

Fig. 1. Thus, the appropriate construction for the '613 patent is "[t]he ornamental design for a water ride, shown in the solid lines in Figures 1–21 and described in the specification." Doc. 53.

### 3. The '960 Patent

The '960 patent has a single claim, claiming the ornamental design for a water ride, as shown and described in Figures 1–7.  Ex. 6. Figure 1 (right) provides an exemplary perspective view of a water ride showing the claimed design. Ex. 6 at Fig. 1. Thus, the appropriate construction for the '960 patent is

FIG. 1

"[t]he ornamental design for a water ride, shown in the solid lines in Figures 1–7 and described in the specification." Doc. 53.

### 4. The '732 Patent

The '732 patent has a single claim, claiming the ornamental design for a water ride, as shown and described in Figures 1–7.  Ex. 8. Figure 1 (right) provides an exemplary perspective view of a water ride showing the claimed design. Ex. 8 at Fig. 1. The '732 patent

FIG. 1

does not claim the features shown in broken lines or in lines consisting of short and long dashes. *Id.* at Description. Thus, the appropriate construction for the '732 patent is "[t]he ornamental design for a water ride, shown in the solid lines in Figures 1–7 and described in the specification." Doc. 53

### B.     ProSlide's Construction Is Consistent with Federal Circuit Precedent

ProSlide's construction for each of the Asserted Design Patents adheres to the Federal Circuit's "preferable course" of construing design patents—that is relying on the figures to provide the best description. *Egyptian Goddess*, 543 F.3d at 679. Accordingly, each Asserted Design Patent should be construed as "[t]he ornamental design for a water ride, shown in the solid lines in [the Figures] and described in the specification." Doc. 53. Each claimed design should be considered as a whole. *Egyptian Goddess,* 543 F.3d at 680. And because each feature of the claimed designs has ornamental design elements that are not purely functional, each design element should be included in the claim construction for the finder of fact.

### C.     Function Does Not Dictate the Appearance of the Individual Features or Overall Design of the Asserted Design Patents

WhiteWater improperly attempts to raise an invalidity challenge under 35 U.S.C. § 171 during claim construction by highlighting almost every feature of the designed articles and claiming each is dictated by function. This attempt to narrow or erase the claim scope of the Asserted Design Patents is improper because: (1) it is improper during claim construction to factor out elements that serve a useful purpose; (2) WhiteWater attempts to consider the functionality of the appearance of design elements in isolation rather than considering the design's overall visual impression; and (3) WhiteWater ignores the availability of alternative designs that accomplish the same alleged functionality.

First, the Federal Circuit has rejected claim constructions that factor out

elements that serve a useful purpose, *Sports Dimension*, 820 F.3d at 1322. A design patent protects "an article of manufacture" that must have some utility. Thus, a design patent may include functional features so long as the claim scope is limited to the aesthetic contributions those features make to the overall visual appearance of the claimed design. *Id.* at 1320–21.

Second, proper design patent claim construction "ultimately rest[s] on an analysis of [the patented design's] overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997). WhiteWater's attempt to exclude elements from the claims is an improper request to "convert[] the claim scope of the design patent from one that covers the overall ornamentation to one that covers individual elements." *Sports Dimension*, 820 F.3d at 1322. Thus, WhiteWater's proposed constructions invite error by precluding an examination of the claimed designs as a whole, which would prevent the fact finder from appropriately considering how these elements contribute to the overall visual appearance of the designs. *Id.*

Third, even if WhiteWater were correct that some design features have a function, the overall appearance of the claimed designs, and each constituent feature, is not dictated by function because each reflects design choices made from many available alternative designs that can perform substantially the same underlying functions. The existence of available alternative designs is alone dispositive. *Ethicon*, 796 F.3d at 1329–30.

WhiteWater has identified twelve features across the four Asserted Design Patents, arguing that each feature is dictated purely by function:

- U-shape of the flume ('804, '613, '960, and '732 patents)
- Flanges ('804, '613, '960 patents)
- Rider facing flange ('804, '613, and '960 patents)
- Adjacent flumes ('804, '613, '960, and '732 patents)
- Connection between flumes ('804, '613, '960, and '732 patents)
- Flaring of the flume top at transitions between open and closed ('804, '613, '960, and '732 patents)
- Open portion of the water ride ('613, '960, and '732 patents)
- Change in elevation of flumes ('613, '960, and '732 patents)
- Low separator wall ('613, '960, and '732 patents)
- Ride surface and separators between adjacent flumes ('613, '960, and '732 patents)
- Elongated entrance area ('960 patent)
- Starting blocks ('960 patent)

ProSlide agrees that the *underlying article of manufacture*, i.e., a water ride, has a function. But the issue here is whether the twelve individual design features that WhiteWater has identified are each dictated solely by function. *L.A. Gear*, 988 F.2d at 1123; *see also Ethicon*, 796 F.3d at 1329. They are not. As noted above, none of these features can be dictated by function if there are available alternative designs that can accomplish the same or substantially the same functionality. *L.A. Gear*, 988 F.2d at 1123; *SZ DJI Tech.*, 2019 WL 6840357, at *3. That is where WhiteWater's argument fails.

Mr. Andreas Tanzer, an experienced water ride designer, explains in his attached declaration that there are several visual alternatives to each of the twelve design features identified by WhiteWater that could provide the same or substantially the same underlying function served in the claimed water rides. Ex. 10. Thus, these features are not dictated by function but instead have ornamental qualities, and the patents should be provided with a scope that is commensurate with the overall visual

appearance of the drawings, including each of these features. *Ethicon*, 796 F.3d at 1329–30.

### D.    The '804 Patent Is Not Indefinite

Like the Asserted Utility Patents, the '804 design patent is presumed valid, having undergone a thorough and extensive review by a skilled patent examiner at the USPTO. 35 U.S.C. § 282(a). Thus, WhiteWater must overcome the statutory presumption of validity by showing indefiniteness by clear and convincing evidence. *Microsoft Corp.*, 564 U.S. at 95. It cannot do so.

WhiteWater first contends that the written description of the '804 patent does not define the different kinds of lines used in the figures, making it impossible to determine the scope of what is claimed. Doc. 53. WhiteWater is mistaken. Definiteness is determined from the vantage of a person of ordinary skill in the art, who is presumed to have read the claims, specification, and prosecution history of the patent. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). This person of ordinary skill would therefore have seen the Amendment to the Specification entered by the examiner on October 29, 2020, providing that "[t]he portions shown in broken lines do not form part of the design. The lines consisting of short and long dashed do not form part of the design and are included solely for the purpose of illustrating the boundary of the design." Ex. 9 at 7, 12.[2] Thus, the '804

---

[2] The USPTO has approved ProSlide's requested certificate of correction to correct the USPTO's mistake of omitting the description statement after the brief figure descriptions in the issued patent. Ex. 9 at 1–7.

patent's disclosure, including the file history, sufficiently describes the design, and the patent's claims are not indefinite for failure to define the different types of lines used in the drawings.

As a fallback, WhiteWater contends the '804 patent is indefinite because the interior surface of the water ride is not ascertainable due to alleged inconsistencies and undisclosed views. Doc. 53. WhiteWater fails to identify any such inconsistencies, but, in any event, WhiteWater would "need to show not only that the inconsistencies [are] there, but also that they [are] material enough to invalidate the patent." *Weber-Stephen Prods LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 9304343 at *18–19 (N.D. Ill. Dec. 22, 2015). It cannot do so. Section 112 does not require "blueprint type drawings of an exact scale." *Ex Parte Asano*, 201 U.S.P.Q. 315, 1978 WL 21280, at *2 (B.P.A.I. 1978). Here, the '804 drawings are sufficiently precise to reasonably apprise a person of skill in the art of what is claimed.

## VI.   CONCLUSION

For the foregoing reasons, ProSlide respectfully requests that the Court adopt ProSlide's proposed constructions and reject WhiteWater's proposed constructions. If the Court considers WhiteWater's indefiniteness arguments—for which WhiteWater solely bears the burden of proof by clear and convincing evidence—ProSlide should be given an opportunity to respond to those arguments and any supporting evidence in a reply brief.

Dated: March 4, 2022

Respectfully submitted,

/s/ James R. Barney
James R. Barney (*pro hac vice*)
Anthony J. Berlenbach (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
202-408-4000
Email: james.barney@finnegan.com
Email: anthony.berlenbach@finnegan.com

Dustin Mauser-Claassen
Florida Bar No.: 0119289
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
25 E. Pine St.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
Email: dmauser@kbzwlaw.com

*Counsel for Plaintiff ProSlide Technology Inc.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on March 4, 2022, a true copy of the foregoing

document and associated exhibits were electronically filed with the Clerk of Court

using the Court's ECF System, which will send a Notice of Electronic Filing to all

counsel of record.

<span style="padding-left:3em;">*/s/ James R. Barney*</span>
<span style="padding-left:3em;">James R. Barney</span>