UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| PROSLIDE TECHNOLOGY INC.,<br><br>Plaintiff,<br><br>v.<br><br>WHITEWATER WEST INDUSTRIES, LTD.,<br><br>Defendant. | Case No.: 6:20-cv-02189-CEM-DCI |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. ARGUMENT ........ 2

A. ProSlide Is the Prevailing Party ........ 2

B. WhiteWater's Litigation Tactics Stand Out From the Ordinary ........ 4

1. WhiteWater's Untimely and Disproportionate Discovery Positions Needlessly Drove Up Litigation Costs ........ 4

2. WhiteWater Filed and Withdrew Several Discovery Motions ........ 6

3. WhiteWater's Untimely Motion to Amend Its Answer and Counterclaims Was Due to Its Own Lack of Diligence ........ 7

4. WhiteWater Failed to Admit Basic Facts and Refused to Agree to Truly Uncontested Fact Issues ........ 8

5. WhiteWater's Pre-Trial Conduct Included Vexatious Additions to its Witness List and Untimely Production of Documents Related to a Key Witness ........ 10

6. WhiteWater's Clear Abuse of Privileged Documents ........ 12

7. WhiteWater's Refusal to Streamline this Case Unnecessarily Complicated Pretrial Proceedings ........ 13

8. WhiteWater Ran Up ProSlide's Expenses by Relitigating Decided Issues and Duplicating Briefing ........ 14

9. WhiteWater Manufactured a Standing Issue at the Eleventh-Hour in an Effort to Keep This Case from Going to Trial ........ 18

10. WhiteWater Hid Its True Invalidity Theories Until After Trial Began ........ 19

11. WhiteWater Blindsided ProSlide with a Mid-Trial Inspection by Its Technical Expert 20

12. WhiteWater Disregarded the Joint Pretrial Statement and Violated the Court's Rulings in Its Opening Statement ........ 21

C. WhiteWater's Lack of a Good Faith Defense Also Renders This Case Exceptional ........ 23

1. WhiteWater's Weak Arguments for the '783 Patent ........ 23

2. WhiteWater's Weak Arguments for the '111 Patent ........ 25

IV. CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Dalton*,
158 F.3d 1212 (11th Cir. 1998)....................2, 14

*Boston Scientific Corporation v. Cook Medical LLC*,
2023 WL 3585626 (S.D. Ind. 2023)....................19

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
79 F. Supp. 3d 1111 (C.D. Cal. 2015)....................7

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................2, 4

*Chico's FAS, Inc. v. Clair*,
No. 2:13-cv-792-FtM-38MRM, 2018 WL 1833134 (M.D. Fla. Jan. 25, 2018)....................3, 23

*Cosmo Techs. Ltd. v. Actavis Labs. FL, Inc.*,
No. CV 15-164-LPS, 2019 WL 1417459 (D. Del. Mar. 28, 2019)....................19, 20

*Davis v. Little Giant Ladder Sys., LLC*,
No. 2:19-cv-780-SPC-NPM, 2022 WL 3924144 (M.D. Fla. Aug. 31, 2022)....................16

*Drop Stop LLC v. Zhu*,
757 F. App'x 994 (Fed. Cir. 2019)....................4

*Dynamite Marketing, Inc. v. The WowLine, Inc.*,
No. CV19-3067 (GRB)(AYS), 2023 WL 8358061 (E.D.N.Y. Dec. 1, 2023)....................17, 19, 24

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 3:13-cv-5808-HSG, 2015 WL 9460295 (N.D. Cal. Dec. 23, 2015)....................19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................2

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
572 U.S. 559 (2014)....................2

*Hunter Douglas Inc. v. Great Lake Woods, Inc.*,
No. 15-cv-106-REB-KLM, 2019 WL 1375675 (D. Colo. Mar. 27, 2019) .......... 18, 24

*Intex Recreation Corp. v. Team Worldwide Corp.*,
77 F. Supp. 3d 212 (D.D.C. Jan. 9, 2015) .......... 14

*Location Based Servs., LLC v. Niantic, Inc.*,
No. 5:17-cv-4413-NC, 2018 WL 7569160 (N.D. Cal. Feb. 16, 2018) .......... 18

*Most Worshipful Nat'l Grand Lodge, Free & Accepted Ancient Yorkrite Masons, Prince Hall Origin Nat'l Compact, U.S.A. v. United Grand Lodge GA AF & AYM, Inc.*,
813 F. App'x 455 (11th Cir. 2020) .......... 5

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .......... 1, 2, 23

*Powell v. Home Depot U.S.A., Inc.*,
715 F. Supp. 2d 1285 (S.D. Fla. 2010) *aff'd,* 663 F.3d 1221 (Fed. Cir. 2011) .......... 17, 21

*San Diego Comic Convention v. Dan Farr Prods.*,
2019 WL 1599188 (S.D. Cal. Apr. 15, 2019), *aff'd in part*, 807 Fed. App'x 674 (9th Cir. 2020) .......... 14

*Shum v. Intel Corp.*,
629 F.3d 1360 (Fed. Cir. 2010) .......... 2, 3

*SSL Servs., LLC v. Citrix Sys., Inc.*,
769 F.3d 1073 (Fed. Cir. 2014) .......... 3

*Stengl et al. v. L3 Harris Technologies, et al.*,
No. 6:22-cv-572-PGB-LHP (M.D. Fla. May 23, 2022) .......... 16

*Valador, Inc. v. HTC Corp.*,
No. 1:16-cv-1162, 2018 WL 4940721 (E.D. Va. May 30, 2018) .......... 6

**Statutes**

35 U.S.C. § 285 .......... 1, 23

**Other Authorities**

Fed. R. Civ. P. 37(c)(2) .......... 9, 10

## I. INTRODUCTION

WhiteWater's tactics during the nine-day jury trial were representative of its conduct for the past three years. WhiteWater's unrelenting and abusive litigation behavior unnecessarily increased ProSlide's expenses well beyond the norm. It strayed far beyond zealous advocacy, multiplying the proceedings, delaying, and over-complicating this case. WhiteWater steadfastly maintained substantively weak arguments not because they might be meritorious but because it would be costly for ProSlide to defend. After three years, ProSlide prevailed, securing a jury verdict and judgment in its favor. Now, because WhiteWater's behavior during this case was out of the ordinary and because it presented substantively weak positions, the Court should award ProSlide's attorneys' fees under 35 U.S.C. § 285, holding WhiteWater accountable for its litigation tactics.

## II. LEGAL STANDARD

The Court may award reasonable attorney fees to the prevailing party "in exceptional cases." 35 U.S.C. § 285. The Supreme Court has construed "exceptional" to have its ordinary meaning, i.e., "'uncommon,' 'rare,' or 'not ordinary.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). Thus, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554.

Considering the totality of the circumstances, district courts may award fees

where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless exceptional. *Id.* at 555. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* Other relevant factors may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554, n.6 (quotations omitted).

The prevailing party only needs to prove entitlement to fees by a preponderance of the evidence, *id.* at 557–58, and a district court's exceptionality determination is reviewed only for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 563 (2014). Additionally, the Court has inherent power to award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), such as "by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

## III. ARGUMENT

### A. ProSlide Is the Prevailing Party

As a preliminary matter, ProSlide is the prevailing party in this case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The prevailing party must "receive[] at least some relief on the merits[,] materially alter[ing] the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010). Importantly, a

patentee does not have to succeed on all of its infringement claims to be the prevailing party. *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086-87 (Fed. Cir. 2014) (concluding that the district court erred in finding that patentee was not the prevailing party when it proved willful infringement of one patent but not another).

There can only be one prevailing party. *Shum*, 629 F.3d at 1367; *Chico's FAS, Inc. v. Clair*, No. 2:13-cv-792-FtM-38MRM, 2018 WL 1833134, at *4 (M.D. Fla. Jan. 25, 2018) ("The Court 'must choose one, and only one, prevailing party.'"). Here, that is ProSlide. The jury's verdict was nearly a clean-sweep for ProSlide. Doc. 500. ProSlide prevailed on the validity of each of the asserted patents, on infringement of three of four of WhiteWater's accused products, and is owed damages. *Id.* ProSlide succeeded in this litigation and achieved the benefits it sought when pursuing this action. *Chico's*, 2018 WL 1833134, at *4 (finding that plaintiff prevailed because "it received [the] relief sought by bringing this action"). Indeed, this Court has already recognized that ProSlide prevailed. Doc. 513 (entering judgment "in favor of Plaintiff and against Defendant").

The fact that the jury found the asserted design patent valid but not infringed does not alter the fact that ProSlide is the prevailing party. *SSL Servs.*, 769 F.3d at 1086 (finding that "[a] party does not need to prevail on all claims to qualify as the prevailing party").

Moreover, ProSlide's case-narrowing efforts (Doc. 311) and the Court's pre-trial indefiniteness ruling (Doc. 305) do not alter ProSlide's status as the prevailing party because neither of those actions changed WhiteWater's liability. *Chico's*, 2018 WL

1833134, at *4 (awarding fees to Plaintiff because "even though Defendant won on [a summary judgment] ground, the litigation did not end, and Plaintiff continued to maintain other theories seeking the same relief"). Aside from one product,[1] the Court's ruling on dispositive motions and ProSlide's streamlining efforts did not alter the accused products at issue, and WhiteWater was found liable for its infringing AquaSphere, Tailspin, and Orbiter products.

### B. WhiteWater's Litigation Tactics Stand Out From the Ordinary

"Exceptional" here is an understatement. At each stage of this case, WhiteWater's litigations tactics drove up litigation costs and prejudiced ProSlide. *Drop Stop LLC v. Zhu*, 757 F. App'x 994, 999 (Fed. Cir. 2019) ("Defendants' conduct over the course of the entire litigation supports the conclusion that this is an exceptional case."); *Chambers*, 501 U.S. at 43, 45-46.

#### 1. WhiteWater's Untimely and Disproportionate Discovery Positions Needlessly Drove Up Litigation Costs

WhiteWater's delay-then-ambush strategy was on display early and often in this case. WhiteWater ignored Court-ordered discovery deadlines, violated the parties' discovery agreements, and demanded last-minute, scorched-earth email discovery, inflating ProSlide's legal expenses at each step.

WhiteWater waited over seven months after ProSlide initiated this action to issue its first discovery requests. Doc. 80-3. Despite WhiteWater's delays, ProSlide

[1] ProSlide withdrew its infringement allegations against WhiteWater's Mat Racer during the case-narrowing process because WhiteWater made no sales after the design patent issued and appeared to no longer be offering the Mat Racer for sale.

produced thousands of documents, complying with the Court's July 18, 2022 deadline for "Substantial Completion of Document Production." Doc. 35; Doc. 192-1.

After failing to comply with this deadline itself, WhiteWater waited until July 19, 2022—the day after the Court's substantial completion date—to request email discovery for the first time, with less than two months remaining in fact discovery. Doc. 80-19, Doc. 35. WhiteWater knew its belated requests would delay the proceedings. *Most Worshipful Nat'l Grand Lodge, Free & Accepted Ancient Yorkrite Masons, Prince Hall Origin Nat'l Compact, U.S.A. v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 461 (11th Cir. 2020) (affirming decision that "serving of multiple discovery requests . . . shortly before the end of the discovery period" warranted fees).

Aside from being untimely, Whitewater's July 2022 ESI discovery requests went far beyond the parties' E-Discovery Agreement by identifying more custodians than the agreement permitted. Doc. 80-2 at ¶ 10; Doc. 81 at 1-2. Then, after ProSlide had begun its collection and search on the originally identified custodians, Whitewater improperly swapped out several custodians, causing ProSlide to expend significant expense and time redoing work it had already started. Doc. 80-21.

WhiteWater also ignored the parties' agreement to "narrowly tailor" search terms. Doc. 80-2 at ¶ 10. WhiteWater instead sought to broaden the scope of the ESI search by using top-level disjunctive combinations (e.g., searches for documents containing Term A "or" Term B). Doc. 79-2 Doc. 80-2 at ¶ 10. In an effort to facilitate the completion of fact discovery, ProSlide proposed that WhiteWater use proximity

limiters (e.g., A "within #" of B) to narrow the scope of its search terms. Doc. 81 at 2. Whitewater refused, and the Court's intervention became necessary. Doc. 105.

The Court agreed that WhiteWater's open-ended ESI requests required proximity limiters and required WhiteWater to bear the cost of searching the untimely-identified custodians. Doc. 109 at 2-3. But this small amount ($10,000) that the Court shifted to WhiteWater does not come close to covering the full costs of WhiteWater's conduct to ProSlide. WhiteWater's email discovery tactics exponentially increased the costs beyond the proportionate needs of this case—costing ProSlide significant monthly fees of in excess of $10,000 per month just in cloud storage and hosting fees alone.[2]

### 2. WhiteWater Filed and Withdrew Several Discovery Motions

WhiteWater persisted by filing several motions to compel, only to later withdraw the motions before the Court could rule on them. Due to WhiteWater's own delays during discovery, this practice started in October 2022—almost two years into this case. *See, e.g.*, Docs. 110, 111, 112 (filing motions to compel) and Docs. 114, 122, 126 (withdrawing the motions to compel before the Court's ruling). WhiteWater continued this practice throughout the rest of discovery. *See* Doc. 144 (filing a motion to compel an additional deposition); Doc. 151 (withdrawing the motion in a matter of days). WhiteWater's repeated misuse of discovery procedures forced ProSlide to incur unnecessary expenses and diverted attention from the substantive issues. *Valador, Inc.*

[2] Due to the enormous volume of materials collected during email discovery, the hosting fees ballooned from $2,500 in July 2022 to in excess of $10,000 per month, starting in September 2022 and continuing until the material was archived after trial. *See* Doc. 526-9 at 5-8.

*v. HTC Corp.*, No. 1:16-cv-1162 (TSE/JFA), 2018 WL 4940721, at *6 (E.D. Va. May 30, 2018) (awarding fees when a party failed to genuinely meet and confer, "instead filing a motion first and stating that it would withdraw the motion if the discovery dispute could be resolved").

Symptomatic of this approach, WhiteWater filed an expedited motion to compel (Doc. 131) on Wednesday, November 23, 2023—the day before Thanksgiving—requiring ProSlide to respond within five days (resulting in a deadline of the Monday after Thanksgiving). Doc. 15. This timing suggests that WhiteWater's goal was to harass ProSlide and its counsel over the holiday weekend. *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1117 (C.D. Cal. 2015) (awarding fees when a party's use of a holiday weekend "suggest[ed] harassment"). Despite the time pressure caused by WhiteWater, ProSlide responded on Monday, November 28 (Doc. 135), and the Court promptly denied WhiteWater's motion. Doc. 150.

Taken together, WhiteWater's aggressive and indefensible tactics during discovery exemplify its improper behavior throughout this case. *Cambrian*, 79 F. Supp. 3d at 1117 (awarding fees after a party litigated the case improperly by "requesting overly broad discovery, and committing other discovery abuses, including serial meritless motions to compel and uncooperative behavior").

#### 3. WhiteWater's Untimely Motion to Amend Its Answer and Counterclaims Was Due to Its Own Lack of Diligence

WhiteWater continued its delay-then-ambush tactics by moving very late in the case to amend its pleadings to add an entirely new counterclaim of inequitable conduct. Doc. 268. Indeed, the Court found that WhiteWater "did not make an

adequate effort to meet" its ordered deadline to amend the pleadings. *Id.* at 5 ("Defendant's inactivity at the start of litigation with respect to discovery in general is the reason Defendant could not comply with the Court's [deadline]."). But "[e]ven if Defendant acted diligently in pursuing discovery," the Court still found "that Defendant did not act with diligence from that point forward." *Id.* at 7.

Despite WhiteWater's lack of diligence throughout this case, it burdened ProSlide and the Court with extensive briefing in the midst of dispositive and *Daubert* motions. *Id.* at 11 (noting WhiteWater's delay in filing its motion on February 3, 2023, when dispositive and *Daubert* motions were due February 10, 2023), overwhelming and distracting ProSlide from its responses to WhiteWater's 50-page summary judgment motion and its three separate *Daubert* motions (Docs. 184, 186, 188, 189).

#### 4. WhiteWater Failed to Admit Basic Facts and Refused to Agree to Truly Uncontested Fact Issues

WhiteWater failed to answer the most basic requests for admission and refused to agree to uncontested facts in the Joint Final Pretrial Statement ("JFPS"), imposing additional expenses on ProSlide and hindering the efficient resolution of this case.

During discovery, ProSlide served one set of 71 Requests for Admission ("RFA"). Ex. A. In its response, WhiteWater denied even the most basic of ProSlide's Requests, despite offering no experts at trial to contest these facts. For example, WhiteWater refused to "[a]dmit that the Aquasphere is a water slide feature," that the Tailspin is "a slide feature for an amusement ride adapted to carry a rider or ride vehicle sliding thereon," or that "the Orbiter has an inrun permitting ingress of the rider or ride vehicle at a first elevation." *Id.* at 4, 14, and 37-38.

WhiteWater had no reasonable grounds to refute these and many other of ProSlide's RFAs. Indeed, WhiteWater's own marketing documents and expert conceded these very points, and it did not contest them at trial. Doc. 490 Trial Tr. Vol. 15 (11/7/23) at 37:12-18; Doc. 490 Trial Tr. Vol. 15 (11/7/23) at 52:20-54:3; Doc. 490 Trial Tr. Vol. 15 (11/7/23) at 83:1-17. Yet WhiteWater forced ProSlide, the Court, and the jury to resolve basic facts that WhiteWater never intended to dispute. WhiteWater's refusal to admit the RFAs supports not only a finding that this is an exceptional case, but also provides an independent basis for the recovery of ProSlide's fees for proving those facts under Fed. R. Civ. P. 37(c)(2).

Unfortunately, WhiteWater's refusal to agree to uncontested facts continued through the JFPS. In late March 2023, ProSlide served WhiteWater with a draft JFPS. WhiteWater's redlines removed several undisputed facts despite WhiteWater's previous admissions. Ex. B. Attached as Exhibit C is an example of an uncontroverted fact to which WhiteWater refused to agree, despite having previously admitted a nearly-identical statement. WhiteWater had no basis to refute this fact in the JFPS.

This was a repeated offense by WhiteWater, denying other information in the JFPS that it previously admitted in its responses to interrogatories. *Compare* Ex. D at 21-22 *with* Ex. B at 52-53. WhiteWater also refused to include admissions that it had made in its Answer to the Second Amended Complaint. For instance, after admitting under oath the information in Paragraphs 14, 15, 17, 18, and 19 of its Answer (Doc. 45), it denied the exact same information in the JFPS. Ex. B at 45-46. Similarly, even though WhiteWater's own expert did not contest the list of Accused Products, (Ex. E

at 15:20-21:6), WhiteWater refused to include that list in the JFPS. Ex. B at 46-52 (Compare 2023.04.06 WhiteWater redlines).

ProSlide should have never had to spend resources fighting WhiteWater on facts that were already admitted. WhiteWater's approach in this regard warrants an award of attorneys' fees or, alternatively, fees under Fed. R. Civ. P. 37(c)(2).

**5. WhiteWater's Pre-Trial Conduct Included Vexatious Additions to its Witness List and Untimely Production of Documents Related to a Key Witness**

After discovery ended, WhiteWater's conduct did not change. In the pretrial period, WhiteWater included an attorney from ProSlide's trial team on its witness list and produced a trove of previously held-back documents for another WhiteWater trial witness.

**a. WhiteWater's Bad Faith Listing of ProSlide's Trial Counsel on Its Witness List**

First, WhiteWater improperly included Mr. David Reese—a member of ProSlide's trial team—on its witness list solely to prejudice ProSlide. Ex. F at 26-27. WhiteWater argued that Mr. Reese's testimony was relevant because he "was an attorney of record in the filing and prosecution of the Asserted Patents before the USPTO." *Id.* But WhiteWater added Mr. Reese to its witness list *after* the Court denied WhiteWater's motion to add a defense of inequitable conduct. Doc. 268. Given that inequitable conduct was not part of the case, Mr. Reese's involvement in the prosecution of the patents was irrelevant, and WhiteWater had no legitimate basis to include Mr. Reese on its trial witness list. Instead, it prejudiced ProSlide by attempting to deprive ProSlide of its choice of counsel. WhiteWater refused to remove Mr. Reese

from its witness list until the eve of trial and only did so after ProSlide indicated it would include WhiteWater's lead counsel as a trial witness under WhiteWater's same flawed reasoning.

Unfortunately, that was not the end of WhiteWater's efforts to drag ProSlide's counsel into the case. During trial, WhiteWater used its *ore tenus* mistrial motion as another attempt to inject Mr. Reese back into the case, arguing (without support) that "[t]he issue goes deeper, Your Honor, because the patent attorney, who was advising Mr. Hunter and preparing the patent applications and handling the patent file all the way through for the '783 patent is Mr. David Reese, who is a member of Plaintiff's trial team in this case." Doc. 455 Trial Tr. Vol. 5 (11/1/23) at 8:19-9:1. WhiteWater's conduct on this issue was improper and prejudicial to ProSlide.

**b. WhiteWater Withheld Documents During Discovery, Concealing One of Its Key Trial Witnesses**

Second, WhiteWater deliberately withheld documents related to Rick Briggs, and then presented him as one of their key fact witnesses at trial. This disrupted the orderly presentation of evidence and once again prejudiced ProSlide, adding unnecessary complexity to the trial and unfairly depriving ProSlide of an opportunity to adequately prepare for cross examination of Mr. Briggs.

The Court implemented a deadline for the "Substantial Completion of Document Production." Doc. 35. Prior to this deadline, WhiteWater produced only a handful of documents relating to Mr. Briggs—almost all of which were published patents or waterslide magazines. ProSlide presumed from this lack of relevant production that the former WhiteWater employee would not have much discoverable

information related to this case. Unfortunately, over a year later, well after the close of all discovery and just one month before trial, WhiteWater produced several batches of documents relating *entirely* to Mr. Briggs's background and developments in the waterslide industry. *See, e.g.*, Doc. 502 at DEX-3042–3117. WhiteWater then called Mr. Briggs as one of its lead witnesses in its case-in-chief and attempted to publish several unproduced documents and pictures during Mr. Briggs's testimony to the jury. Doc. 467 Trial Tr. Vol. 11 (11/3/2023) at 39:21-41:22.

Consistent with WhiteWater's hide-the-ball strategy, WhiteWater concealed Mr. Briggs during discovery to later make him one of its key witnesses at trial.

**6. WhiteWater's Clear Abuse of Privileged Documents**

WhiteWater disregarded the parties' confidentiality agreement and ignored ProSlide's claims of privilege. As explained in ProSlide's opposition to WhiteWater's Motion *in Limine* No. 10 (Doc. 394), after inadvertently producing four privileged documents during discovery, in December 2022, ProSlide followed the proper procedure and promptly clawed back the documents, and WhiteWater did not object. Doc. 394 at 1. Then, almost 10 months later and one month before trial, WhiteWater challenged ProSlide's privilege claim in a motion *in limine*. This ambush required ProSlide to invest resources in addressing WhiteWater's nearly-year-old privilege challenge. Recognizing this as one of WhiteWater's delay-then-ambush tactics, the Court denied WhiteWater's motion, noting that "Defendant sat on its hands until the eve of trial, and coincidentally the motion in limine filing deadline, to present this privilege dispute to the Court." Pretrial Conf. Hr'g Tr. (10/23/23) at 8:9-21.

### 7. WhiteWater's Refusal to Streamline this Case Unnecessarily Complicated Pretrial Proceedings

WhiteWater not only refused to narrow its own case but also resisted ProSlide's attempts to narrow its case for trial, reflecting an unwillingness to streamline proceedings, causing ProSlide significant expense, and eventually requiring the Court's intervention.

As discussed in Sections III.B.7 and III.B.9 below, in the lead-up to trial, WhiteWater refused to narrow its invalidity defenses and insisted on raising new and already-decided issues, adding to its ever-expanding list of issues it sought to try. In contrast, ProSlide began streamlining for trial well before dispositive motions. Doc. 311. But WhiteWater contested each of ProSlide's routine streamlining attempts. *Id.* at 3. Eventually, ProSlide had to involve the Court, elevating this from a routine pretrial practice to an overcomplicated and expensive issue. Docs. 311, 323.

WhiteWater also used this as an opportunity to file futile motions, serving only to increase ProSlide's expenses. Despite the Court's order that the pleadings would be merged into the JFPS, Doc. 276 at 6, WhiteWater filed a motion requesting the Court to dismiss ProSlide's withdrawn claims with prejudice just days before the JFPS was filed. Doc. 312. While this was nothing more than an exercise in redundancy, it required ProSlide to file a response and focus the Court on the actual disputed issue—WhiteWater's refusal to accept that the Court no longer had jurisdiction over certain of its counterclaims. Doc. 323.

WhiteWater's inability to compromise required several hearings and conferrals. *See generally* Hr'g Tr. (9/18/23); Hr'g Tr. (9/19/23) at 2:19-21, 6:22-7:1; Hr'g Tr.

(9/20/23). This conduct not only hindered the efficient resolution of this case but also demonstrated a disregard for the Court's and the parties' time. *Barnes*, 158 F.3d at 1214 (noting that bad faith includes delays and disruptions).

### 8. WhiteWater Ran Up ProSlide's Expenses by Relitigating Decided Issues and Duplicating Briefing

#### a. WhiteWater Forced ProSlide to Relitigate and Redefend Decided Grounds

WhiteWater's re-litigation of settled issues veered far beyond zealous advocacy. *See San Diego Comic Convention v. Dan Farr Prods.*, 2019 WL 1599188, at *4 (S.D. Cal. Apr. 15, 2019), *aff'd in part*, 807 Fed. App'x 674 (9th Cir. 2020) (awarding fees when defendants "repeated, re-argued, and recycled arguments already briefed by both parties and analyzed and ruled on by the Court"). This wasteful approach forced ProSlide to repeatedly defend already-resolved issues and incur unnecessary expenses, while also disrupting the efficiency of the proceedings and burdening the Court. WhiteWater's attempts to continually revisit resolved matters and repeated requests for clarification reflected a disregard for the principles of finality and judicial efficiency.

As one example, the Court resolved all 41 of WhiteWater's indefiniteness arguments. Doc. 305 at 47-62, 68-70. But WhiteWater refused to accept this ruling because it was not the case-ending victory it hoped for. Instead, WhiteWater sought time and again to relitigate the Court's definiteness ruling and raised entirely new indefiniteness arguments on the eve of trial, each time dragging ProSlide through more pretrial briefing. Docs. 313, 315-1, and 344; *see Intex Recreation Corp. v. Team Worldwide*

*Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. Jan. 9, 2015) (awarding attorney's fees because the non-prevailing party sought to re-litigate claim construction issues).

Unfortunately, claim construction was not the only instance of WhiteWater's persistent re-litigation. After its summary judgment and *Daubert* motions were largely denied, WhiteWater spent the rest of the pre-trial period raising new, unpreserved arguments and repackaging old arguments into new motions or requests for clarification, which required ProSlide to respond to settled issues and divert significant resources from trial preparation. This was evident in several motions *in limine* where WhiteWater recycled arguments from previous motions, seeking to bury ProSlide in briefing and hinder its trial preparation. For instance, WhiteWater submitted redundant briefing in at least Motion *in Limine* Nos. 1, 7, and 12, repurposing unsuccessful arguments with respect to Messrs. Young and Reed. Docs. 355, 360, 363. The Court recognized WhiteWater's attempt to relitigate its positions and denied WhiteWater's motions. Hr'g Tr. (10/23/23) at 6:16-23 ("Defendant re-argues its position that Young's expert report reflects claim constructions contrary to the plain and ordinary meaning construed by the Court. This Court disagreed with Defendant in its omnibus order and continues to do so now."); *see also id.* at 7:17-20, 9:14-10:1.[3]

WhiteWater's recycled filings were all part of its plan to file 16 motions on the same day, attempting to overwhelm ProSlide in briefing and impede its preparation

[3] This behavior has continued post-trial. WhiteWater requested "clarification" on the deadline for filing responses to ProSlide's enhanced damages and permanent injunction motions (Doc. 518). But the Court already considered WhiteWater's request at the status hearing (Hr'g Tr. (12/12/2023) at 11:5-8), and the response deadline was clearly addressed in the Local Rules. Doc. 512; L.R. 3.01(c).

for trial. Despite local practice, WhiteWater opted, in a single day, to submit 14 separate motions *in limine* and two other pre-trial motions, totaling well over 100 pages. *See generally* Judge Dalton's Form Case Management Report in Patent Cases at 3, https://www.flmd.uscourts.gov/judges/roy-dalton-jr (last visited Oct. 2, 2023) ("All requests *to limit evidence* shall be included in a single motion not to exceed 25 pages." (emphasis added)); *Davis v. Little Giant Ladder Sys., LLC*, No. 2:19-cv-780-SPC-NPM, 2022 WL 3924144, at *1 (M.D. Fla. Aug. 31, 2022) (Chappell, J.) ("Going forward, the parties should know the Court interprets Rule 3.01(a) to mean a party gets one motion in limine (or the rough equivalent of twenty-five pages).").[4]

ProSlide, in contrast, adhered to local practice and filed one 25-page omnibus motion *in limine* in the interest of streamlining and efficiency. Doc. 358. WhiteWater's divergence from this local practice prejudiced ProSlide and inundated the Court with voluminous motions.

**b. WhiteWater Unnecessarily Overcomplicated Briefing and Forced ProSlide to Duplicate Its Efforts**

WhiteWater multiplied the proceedings at every turn. Instead of letting ProSlide file motions seeking the relief it desired and responding accordingly, WhiteWater filed competing briefing, which resulted in illogical and duplicative arguments. This happened, for example, with the briefing related to the dismissal of WhiteWater's

[4] *See also* Judge Antoon's Form Case Management Report in Patent Cases at 2, https://www.flmd.uscourts.gov/judges/john-antoon-ii (last visited Oct. 2, 2023) (same); *see, e.g.*, *Stengl et al. v. L3 Harris Technologies, et al.*, No. 6:22-cv-572-PGB-LHP (M.D. Fla. May 23, 2022) (Byron, J.) (Doc. 32 at 3) ("multiple motions in limine [are] disfavored. All requests to limit evidence must be included in a single motion not to exceed 25 pages without prior leave of court.").

counterclaims. Doc. 311. Instead of permitting ProSlide to file its motion to dismiss for lack of jurisdiction, WhiteWater submitted competing briefing with a nonsensical request—to confirm that the Court did *not* lack jurisdiction. Doc. 312. Logically, this argument should have been reserved for WhiteWater's response, but WhiteWater needlessly over-complicated and expanded the briefing. *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1297 (S.D. Fla. 2010) *aff'd,* 663 F.3d 1221 (Fed. Cir. 2011) ("[Defendant's] litigation tactics provoked numerous disputes between the parties, delayed resolution of [plaintiff]'s claims, and resulted in unnecessary motions practice.").

This was also a theme throughout WhiteWater's motions *in limine*, where ProSlide had to defend against WhiteWater's attempts for additional summary judgment and *Daubert* briefing (Docs. 380, 383, 388, 391), as well as WhiteWater's affirmative motions for specific exceptions to ProSlide's requested relief (Doc. 381) (WhiteWater arguing against parts of ProSlide's motion *in limine* in an affirmative motion rather than in response to ProSlide's motion). These tactics demonstrate a lack of good faith in the litigation process and justify an award of fees. *Dynamite Marketing, Inc. v. The WowLine, Inc.*, No. CV19-3067 (GRB)(AYS), 2023 WL 8358061, at *7-8 (E.D.N.Y. Dec. 1, 2023) (finding an award of fees is warranted when defendant "unnecessarily multiplie[s] the proceedings" and takes unreasonable positions to add "unjustified layers of complexity and expense to the resolution of the case").

### 9. WhiteWater Manufactured a Standing Issue at the Eleventh-Hour in an Effort to Keep This Case from Going to Trial

As this case approached trial, WhiteWater became even more desperate to impede this case's progress and contrived an unfounded standing argument in hopes of derailing the proceedings. Doc. 347. ProSlide, compelled to address the groundless challenge, incurred unnecessary expenses and was again forced to divert attention and resources away from its trial preparations. Doc. 378.

From the inception of this case, ProSlide maintained its unequivocal ownership of all rights, titles, and interests in the asserted patents. Doc. 1 at ¶¶ 23, 30, 42. WhiteWater waited until the eve of trial to contest ProSlide's ownership. Doc. 347. In its frivolous motion, WhiteWater failed to present any evidence contradicting ProSlide's recorded ownership and assignments. *Id.* at 4. Instead, it made vague references to fact witnesses' unfamiliarity with the patent assignments—an issue WhiteWater had never identified as a 30(b)(6) topic. Doc. 378 at 5.

The Court deferred ruling on Article III standing to consider the evidence at trial. Doc. 411 at 9-10. ProSlide accordingly presented substantial evidence at trial showing its ownership of the asserted patents. WhiteWater, in contrast, failed to produce a *single shred* of contrary evidence. *Hunter Douglas Inc. v. Great Lake Woods, Inc.*, No. 15-cv-106-REB-KLM, 2019 WL 1375675, at *15 (D. Colo. Mar. 27, 2019) (finding defendants' claim "meritless and needlessly protracted the litigation" when they "failed to put on any significant evidence to support their contention"); *Location Based Servs., LLC v. Niantic, Inc.*, No. 5:17-cv-4413-NC, 2018 WL 7569160, at *1 (N.D.

Cal. Feb. 16, 2018) (recognizing fees are warranted when a party "persists with a clearly untenable claim, or adduces no evidence in support of its position").

WhiteWater's last-minute decision to contest Article III standing (without *any* supporting evidence in its motion or at trial) resulted in a waste of resources for the parties, the Court, and the jury. *Dynamite*, 2023 WL 8358061, at *7.

### 10. WhiteWater Hid Its True Invalidity Theories Until After Trial Began

WhiteWater refused to disclose which of dozens of invalidity grounds it intended to pursue until the Court intervened during trial. This litigation strategy was a calculated effort to cloud transparency, hinder fair play, and prejudice ProSlide. Despite case law directing disclosure, WhiteWater refused to identify which of over twenty-five invalidity arguments it sought to pursue at trial in an attempt to prevent ProSlide from preparing its case and defense. *Cosmo Techs. Ltd. v. Actavis Labs. FL, Inc.*, No. CV 15-164-LPS, 2019 WL 1417459, at *1 (D. Del. Mar. 28, 2019) (ordering party to identify the claims that in good faith it intends to present at trial).[5]

WhiteWater was a counterclaim-plaintiff, asserting that ProSlide's patents are invalid, and thus held the burden of proof with respect to those claims. Doc. 448 Trial Tr. Vol. 2 (10/30/2023) at 93:17-94:5. ProSlide was entitled to fair notice of those claims so it could defend itself. WhiteWater's refusal to put ProSlide on notice of its

[5] *Finjan, Inc. v. Proofpoint, Inc.*, No. 3:13-cv-5808-HSG, 2015 WL 9460295, at *2 (N.D. Cal. Dec. 23, 2015) ("[T]here is no prejudice, let alone undue prejudice, that results from providing fair notice in advance of trial regarding the theories Defendants actually plan to present."); *Boston Scientific Corporation v. Cook Medical LLC*, 2023 WL 3585626, *1–*2 (S.D. Ind. 2023) (ordering accused infringer to disclose to the patentee its specific elected prior art-based invalidity grounds before trial).

actual invalidity claims until after the second day of trial caused ProSlide to expend significant effort and expense in preparing defenses to grounds WhiteWater never intended to raise. *Id.* ("Mr. Barney: At first, they said there's 25 grounds, and that's an almost impossible thing to prepare for, . . . and I'm very concerned that we're going to see surprise grounds."). It also caused ProSlide to repeatedly bring the issue to the Court's attention for fear that WhiteWater would introduce new invalidity theories, as it had done in the expert report (*see generally* Doc. 185) and again in the JFPS (Doc. 358 at 8-10). Doc. 451 Trial Tr. Vol. 4 (10/31/2023) at 188:19-189:10 ("Mr. Barney: I probably sound like a broken record. We don't know what their invalidity case looks like. It's the only case I've ever been in in my whole career where I didn't know what I was going to see when the Defendant put on a validity case.").

This further complicated an already complex case and caused ProSlide to incur additional costs in preparing defenses against invalidity grounds that WhiteWater never intended to assert. *Compare* Doc. 364 at 63-68 (presenting over twenty-five invalidity grounds in JFPS), *with* Doc. 490 Trial Tr. Vol. 15 (11/7/23) at 91:23-92:16 (asserting only five invalidity grounds at trial).

### 11. WhiteWater Blindsided ProSlide with a Mid-Trial Inspection by Its Technical Expert

The parties litigated this case for almost three years. In all that time, WhiteWater and its technical expert never conducted an inspection or test of any ride at issue in this case. Ex. E at 23:17-25:16; *Cosmo Techs. Ltd. v. Actavis Lab'ys Fl, Inc.*, No. CV 15-164-LPS, 2019 WL 1417459, at *2-*3 (D. Del. Mar. 28, 2019) (finding case exceptional when party failed to attempt to test the product). Then, to ProSlide's

surprise, WhiteWater's technical expert, Dr. Stevick, snuck off to complete a last-minute inspection of a Tailspin product *during trial*. Without any prior notice, WhiteWater tried to "slide" this assessment (and the related photos) into Dr. Stevick's demonstratives. Doc. 483 Trial Tr. Vol. 14 (11/7/23) at 20:18-22:15.

As the Court recognized, WhiteWater's mid-trial inspection supports sanctions. Doc. 483 Trial Tr. Vol. 14 (11/7/23) at 22:2-14 ("But what I'm more considering in the circumstance based on this disclosure are sanctions . . . I'm not going to go down the sanctions road, but I think I would be justified in doing so. That's too far."). According to the Court, WhiteWater's untimely and undisclosed inspection was a "bridge too far" and "out of bounds." *Id.* Indeed, WhiteWater's inspection disregarded the Court's case schedule and the deadlines for fact and expert discovery. Doc. 109.

This maneuver added to WhiteWater's overall trial-by-ambush tactic, disrupted the trial proceedings, and imposed additional burdens on ProSlide. Unfortunately, like many of WhiteWater's other litigation tactics, this provoked further disputes between the parties, requiring the Court's intervention and delaying the resolution of this case. *Powell*, 715 F. Supp. 2d at 1297 ("[Defendant's] litigation tactics provoked numerous disputes between the parties, delayed resolution of [plaintiff]'s claims, and resulted in unnecessary motions practice.").

#### 12. WhiteWater Disregarded the Joint Pretrial Statement and Violated the Court's Rulings in Its Opening Statement

After insisting that the parties exchange demonstratives the night before opening arguments, WhiteWater served its 166-slide presentation in a completely jumbled order. Ex. G. To make matters worse, WhiteWater took the position that its

conduct was somehow justified because the parties never agreed to provide their opening demonstrative slides *in order*. *Id.* This calculated maneuver defied common courtesy and violated the purpose of the parties' exchange that WhiteWater proposed (to facilitate a meaningful meet and confer on objections shortly after service).

During opening statements, the motive behind WhiteWater's deliberate jumbling of demonstratives became evident. Despite a clear order from the Court, instructing the parties not to assert that ProSlide is monopolistic for enforcing its patent rights (Hr'g Tr. (10/26/2023) at 12:15-13:6; Hr'g Tr. (10/23/2023) at 8:24-9:8 ("Personal, derogatory characterization are generally inadmissible . . . something like: . . . monopolist.")), WhiteWater displayed a "monopoly" board and argued that ProSlide held a monopoly and that monopolies are bad. Doc. 448 Trial Tr. Vol. 2 (10/30/2023) at 64:18-65:14 (stating that "generally, we don't like monopolies because they're bad for competition"). This blatant violation of the Court's order necessitated a curative instruction, consuming trial time and resources.

WhiteWater's exchange of shuffled demonstratives also distracted ProSlide from WhiteWater's plan to display in its opening demonstratives documents that were not yet admitted (and, as it turned out, would never be admitted), rather than *preview* the evidence. Doc. 447 Trial Tr. Vol. 1 (10/30/2023) at 22:16-23:19 ("The Court: What you intend on showing them is evidence . . . you can't do that on opening. You just can't."). Ignoring the Court's caution on this point, in the opening statement WhiteWater showed the jury documents that ProSlide had strenuous and valid objections to, including exhibits about irrelevant industry show disputes and

competitive intelligence for unrelated products. In total, WhiteWater included *eleven* exhibits in its opening demonstratives that were never admitted into evidence. Ex. H.

WhiteWater's opening statement also drew the Court's sua sponte rebuke for mentioning the no-longer-asserted '508 patent, contrary to the Court's ruling on that issue. Hr'g Tr. (10/26/2023) at 9:13-23; Doc. 448 Trial Tr. Vol. 2 (10/30/2023) at 89:9-90:11 ("You should not have said that '508 patent on opening statement.").

**C. WhiteWater's Lack of a Good Faith Defense Also Renders This Case Exceptional**

As the Supreme Court explained, an exceptional case under Section 285 "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. As if WhiteWater's inappropriate conduct during this case wasn't enough, its substantively weak arguments did not amount to good faith defenses.

**1. WhiteWater's Weak Arguments for the '783 Patent**

WhiteWater spent discovery raising a host of non-infringement and invalidity arguments for the '783 patent. But, presumably recognizing the weaknesses of those defenses, as trial approached, WhiteWater turned its focus almost entirely to its inventorship theory.

WhiteWater's inventorship theory bordered on frivolous because it was wholly unsupported by the law or facts. Some cases in this District have found inventorship meaningfully disputed when there was "ample evidence of record showing that inventorship was in question throughout the course of the litigation." *Chico's*, 2018

WL 1833134, at *5. Such is not the case here. Indeed, WhiteWater could not point to a single individual claiming to be a co-inventor.

Instead, WhiteWater relied entirely on people who explicitly stated that Mr. Hunter was the *sole* inventor and that they were *not* co-inventors. *See, e.g.*, Doc. 457 Trial Tr. Vol. 6 (11/1/23) at 38:19-25; Doc. 483 Trial Tr. Vol. 14 (11/7/23) at 8:11-19 (playing Doc. 444-4 at 25:15-25:21; 112:02-112:04); Doc. 483 Trial Tr. Vol. 14 (11/7/23) at 7:23-8:8 (playing Doc. 444-8 at 64:03-64:08; 125:18-125:24). Indeed, WhiteWater presented *zero* testimony contesting the inventorship of the ’783 patent. *Hunter Douglas*, 2019 WL 1375675, at *15.

Instead, WhiteWater relied almost entirely on an ambiguous Canadian tax document despite the Court having previously explained that listing an individual on this SRED form as “being a key individual directly involved does not equate with having actually conceived anything.” Doc. 305 at 43. WhiteWater then tried to confuse the jury using an interrogatory response relating to a “swearing behind” issue as alleged evidence of incorrect inventorship. *See generally* Doc. 471. But ProSlide’s response had nothing to do with inventorship.

WhiteWater lacked any real evidence to dispute inventorship, but it manufactured a defense anyway. This conduct alone is out of the ordinary. *See Dynamite*, 2023 WL 8358061, at *7 (finding defendant’s position “highly unreasonable” when it presented an inventorship claim that “bordered on frivolity”).

WhiteWater’s anticipation and obviousness defenses were similarly weak. It (i) relied on a reference the Patent Office already considered in issuing the ’783 patent,

(ii) recognized that an allegedly anticipating reference did not teach several limitations, and (iii) ignored overwhelming evidence of objective indicia of nonobviousness. *See* Doc. 508 at 13-14. WhiteWater should have known that it could not prevail on these theories, but it pursued them anyway.

### 2. WhiteWater's Weak Arguments for the '111 Patent

In defense of ProSlide's infringement allegations, WhiteWater did not present a single prior-art invalidity challenge against the '111 patent, instead opting to challenge the "nonpredetermined path" limitation as not enabled. WhiteWater relied on its expert, who was unfamiliar with the waterslide-related ASTM standards, to offer his opinion that a person of ordinary skill in the art could not design the claimed waterslide feature, ignoring the lengthy disclosure of the patent, which provides ample explanation of how to do so. Doc. 494 Trial Tr. Vol. 16 (11/8/23) at 62:13-66:13; Doc. 490 Trial Tr. Vol. 15 (11/7/23) at 88:24-91:18, 135:19-136:1.

WhiteWater's noninfringement arguments for the '111 patent fared no better. Indeed, WhiteWater offered mere barebones noninfringement positions that even its own expert directly contradicted. Doc. 508 at 15; Doc. 490 Trial Tr. Vol. 15 (11/7/23) at 131:22-134:5; *id.* at 165:21-25. This substantive weakness warrants attorneys' fees.

## IV. CONCLUSION

For the reasons explained above, ProSlide respectfully asks that the Court award ProSlide its reasonable attorneys' fees to compensate it for WhiteWater's exceptional conduct in this case. Pursuant to Local Rule 7.01(b)(2), ProSlide states that a fair estimate of the fees is $7.5 million.

## LOCAL RULE 3.01(G) CERTIFICATION

I hereby certify that on December 26, 2023, counsel for Plaintiff conferred with counsel for Defendant via email regarding the present motion. Counsel for Defendant stated that they oppose the motion.

Dated: December 26, 2023 Respectfully submitted,

*/s/ James R. Barney*
James R. Barney (*pro hac vice*)
Elizabeth D. Ferrill (*pro hac vice*)
Sonja W. Sahlsten, Florida Bar No. 0119797
Anthony J. Berlenbach (*pro hac vice*)
Ryan T. Davies (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: 202-408-4000
Email: james.barney@finnegan.com
Email: elizabeth.ferrill@finnegan.com
Email: sonja.sahlsten@finnegan.com
Email: anthony.berlenbach@finnegan.com
Email: ryan.davies@finnegan.com

Dustin Mauser-Claassen
Florida Bar No. 0119289
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
25 E. Pine St.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
Email: dmauser@kbzwlaw.com

*Counsel for Plaintiff ProSlide Technology Inc.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on December 26, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Dustin Mauser-Claassen
Dustin Mauser-Claassen
Florida Bar No.: 119289

*Counsel for Plaintiff ProSlide Technology Inc.*