**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| PROSLIDE TECHNOLOGY, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>WHITEWATER WEST INDUSTRIES, LTD.,<br><br>*Defendant*. | C.A. No. 6:20-cv-02189-CEM-DCI |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

A. The Prosecution History of the ’783 Patent Is Remarkably Unremarkable ........................................ 2

B. WhiteWater Admitted to Knowing About ProSlide’s PCT Application During the Development of the Infringing Products ........................................ 4

C. WhiteWater Used the Same Commonplace Patent Prosecution Techniques (Which It Maligns) in Pursuing Its Orbiter Patent ........................................ 6

III. LEGAL STANDARD ........................................ 7

IV. ARGUMENT ........................................ 8

A. ProSlide Did Not Make False and Misleading Assertions of Fact ........................................ 8

1. WhiteWater Suggests an Artificial Siloing of the ’508 and ’783 Patents ........................................ 9

2. Evidence of WhiteWater’s Copying Is Relevant to Multiple Issues ........................................ 11

B. WhiteWater’s Mistaken View of the Caselaw ........................................ 13

C. WhiteWater’s Incorrect Assertions and Relitigation of Decided Issues ........................................ 16

1. The ’783 Patent Was Not Filed as “an Entirely New” Application as WhiteWater Claims ........................................ 16

2. WhiteWater’s Recycled Written Description/Priority Arguments ........................................ 17

3. WhiteWater’s Recycled Motion *in Limine* Argument ........................................ 19

V. CONCLUSION ........................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
500 F.3d 1230 (11th Cir. 2007)....................7

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
198 F. Supp. 3d 1343 (S.D. Fla. Jul. 27, 2016)....................12

*Barnes v. Dalton,*
158 F.3d 1212 (11th Cir. 1998)....................8

*Copan Italia S.p.A. v. Puritan Med. Prods. Co.*,
2018 WL 5891742 (D. Me. Nov. 9, 2018) ....................15

*Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*,
2023 WL 5219773 (Fed. Cir. Aug. 15, 2023) ....................13, 14, 15

*Footman v. Cheung*,
341 F. Supp. 2d 1218 (M.D. Fla. 2004) ....................8

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (1991) ....................8

*Halo Elecs, Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ....................14

*Hyde v. Irish*,
962 F.3d 1306 (11th Cir. 2020)....................8

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ....................12

*Idenix Pharms. LLC v. Gilead Sciences, Inc.*,
271 F. Supp. 3d 694 (D. Del. Sep. 22, 2017).................... 12, 13

*Illumina, Inc. v. BGI Genomics Co., Ltd.*,
2022 WL 899421 (N.D. Cal. Mar. 27, 2022) ....................15

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004) ....................11

*Martin v. United States*,
99 Fed. Cl. 627 (Fed. Cl. 2011) ........................................................ 17

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992) ........................................................ 12

*Secretary of Labor v. Caring First, Inc.*,
2017 WL 4764350 (M.D. Fla. Oct. 20, 2017) ............................ 7, 8, 20

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
396 F. Supp. 3d 323 (S.D.N.Y. Aug. 28, 2019)................................ 15

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
330 F. Supp. 3d 574 (D. Mass. Aug. 30, 2018) ................................ 15

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985) ........................................... 13, 14, 15

*WCM Indus., Inc. v. IPS Corp.*,
721 Fed. App'x 959 (Fed. Cir. 2018) .................................... 13, 14, 15

*Windsurfing Int'l Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ........................................................ 12

**Statutes**

28 U.S.C. § 1927........................................................................ 7, 8, 20

35 U.S.C. § 111(b)(5) ..................................................................... 2

35 U.S.C. § 120 ............................................................................. 9

35 U.S.C. § 121 ............................................................................. 9

35 U.S.C. § 365 ............................................................................. 9

35 U.S.C. § 386 ............................................................................. 9

**Other Authorities**

Manual of Patent Examining Procedure § 201.............................2, 9, 10, 17

## I. INTRODUCTION

Defendant WhiteWater West Industries, Ltd.'s ("WhiteWater") Motion for Sanctions (the "Motion") (Doc. 514) presses legally and factually baseless positions in an effort to distract from the strength of Plaintiff ProSlide Technology, Inc.'s ("ProSlide") post-trial motions for a permanent injunction and enhanced damages. It is also a perfect example of why ProSlide deserves its attorneys' fees in this litigation, as explained in Doc. 535.

In the Motion, WhiteWater accuses ProSlide of making false and misleading statements in its post-trial motions by allegedly obfuscating the '508 and '783 patents. But ProSlide did not misrepresent anything. ProSlide's statements that WhiteWater was aware of ProSlide's patent portfolio are entirely accurate.

Most troubling, WhiteWater's Motion reflects a fundamental misunderstanding of patent law. It boldly asserts that ProSlide misled not only the Court and the jury, but also the Patent Office in filing for the '783 patent as a continuation application, a routine and conventional procedure that WhiteWater itself uses in its own patent applications. And the Motion is devoid of support for its assertions. The legal authority WhiteWater relies on to allege ProSlide made false and misleading claims is a non-precedential, unreported decision that is not analogous to the facts of this case. Even worse, the Motion contains numerous incorrect assertions and rehashes arguments that the Court has already considered and rejected. Not only should WhiteWater's Motion be denied, but this Motion is yet another reason supporting ProSlide's entitlement to fees as outlined in ProSlide's motion (Doc. 535).

## II. BACKGROUND

### A. The Prosecution History of the '783 Patent Is Remarkably Unremarkable

ProSlide filed U.S. provisional App. No. 62/011,898 on June 13, 2014. JTX-005 at (60) (attached hereto as Ex. A). Provisional applications are abandoned as a matter of law after 12 months. 35 U.S.C. § 111(b)(5). Accordingly, on March 3, 2015, prior to the provisional application expiring, ProSlide timely filed international application PCT/CA2015/050159 ("PCT application") claiming priority to the provisional. On December 17, 2015, the PCT application published as WO 2015/188265. DEX-1366 (attached hereto as Ex. B). Complying with Article 22(1) of the Patent Cooperation Treaty ("PCT"), ProSlide filed U.S. non-provisional App. No. 15/318,202 as a "national stage" entry on December 12, 2016, prior to the expiry of the 30-month deadline.[1] JTX-005 at (63). App. No. 15/318,202 published as U.S. Pub. No. 2017/0106295 on April 20, 2017. While App. No. 15/318,202 was still pending, ProSlide filed U.S. App. No. 16/569,870 on September 13, 2019 as a continuation application.[2] Application No. 15/318,202 issued as the '508 patent on November 20, 2019. App. No. 16/569,870 issued as the '783 patent on June 17, 2020. JTX-005 at (45). ProSlide's PCT application, the '508 patent, and the '783 patent all contain the *exact* same specification and figures. A timeline of these events is illustrated below:

---

[1] *See* Manual of Patent Examining Procedure ("MPEP") § 1893 (https://mpep.uspto.gov/).

[2] "A continuation application is an application for the invention(s) disclosed in a prior-filed copending nonprovisional application, international application designating the United States, or international design application designating the United States. The disclosure presented in the continuation ***must not include*** any subject matter which would constitute new matter if submitted as an amendment to the parent application." MPEP § 201.07 (emphasis added).


2014
2015
2016
2017
2018
2019
2020
Filed: Jun. 13, 2014
U.S. Prov. 62/011,898
(Priority to Provisional App.)
Filed: Mar. 3, 2015
PCT/CA2015/050159
(Priority to PCT)
Published: Dec. 17, 2015
WO 2015/188265 A1
Filed: Dec. 12, 2016
U.S. App. 15/318,202
Published: Apr. 20, 2017
U.S. 2017/0106295 A1
(Continuation)
Filed: Sep. 13, 2019
U.S. App. 16/569,870
Issued: Nov. 20, 2019
U.S. 10,500,508 B2
Published: Jan. 20, 2020
U.S. 2020/0001191 A1
The '783 patent
Issued: Jun. 17, 2020
U.S. 10,702,783 B2

### B. WhiteWater Admitted to Knowing About ProSlide's PCT Application During the Development of the Infringing Products

WhiteWater's development of the Orbiter and Tailspin took place after ProSlide's PCT application was filed and published. WhiteWater's director of innovation, Claudio Barrera, admitted at trial that WhiteWater subscribes to a service called "Patsnap" that provides alerts when ProSlide's patent applications publish or one of ProSlide's patents issues. Doc. 461 Trial Tr. Vol. 8 (Barrera Direct) at 65:9-19 (Q: "So whenever a ProSlide patent issues or a ProSlide patent application is published, you get a Patsnap alert, right?" A: "The way it's been set up, correct."). Long after ProSlide's PCT application had become public in 2015, WhiteWater began its "Looping Saucer" project, which spawned the infringing Orbiter and Tailspin. As WhiteWater admits in its Motion, WhiteWater was working on the Orbiter in 2016 and Tailspin in 2017, *after* the publication of ProSlide's PCT application on December 17, 2015. Motion at 3.

The evidence at trial demonstrated that WhiteWater was also aware of ProSlide's FlyingSAUCER, and, while WhiteWater was initially skeptical of it, later acknowledged the great commercial success it achieved. Doc. 461 at 28:11-22 (citing PTX-1189) ("granted, with a ton of wasted fiberglass"); *id.* at 31:17-32:5 (citing PTX-1165) ("a ton of extra glass that adds no value"); *id.* at 42:3-15 (citing PTX-1134) ("ProSlide has a successful saucer product"); *id.* at 25:23-26:2 (citing PTX-1112) ("The FlyingSAUCER is an innovative ride that [WhiteWater] currently does not have a match or trump for."). WhiteWater's management team sounded the alarm in

February 2017, after losing yet another sale to ProSlide, and proclaimed that WhiteWater needed its own "'real' saucer ride." *Id.* at 29:7-20 (citing PTX-1189); *see also* PTX-1165, PTX-1166, PTX-1112. At the stage gate 0 review (i.e., the inception) of the Looping Saucer project in March 2017, WhiteWater identified ProSlide's "successful saucer product with at least two patents pending that we know of." Doc. 461 at 43:7-11 (citing PTX-1134 at 9). WhiteWater acknowledged its gate 0 presentation included images from ProSlide's published applications, including Fig. 14A of ProSlide's PCT application. *Id.* at 43:17-25; *see also* Doc. 519-1 (PTX-1134).

[redacted]

PTX-1134 at 9. The same figure appears in the PCT application, '508 and '783 patents:




ProSlide's PCT application




'508 patent




'783 patent

Later, in September 2017, when the Orbiter project had progressed to "Gate 1," WhiteWater made another internal presentation remarking on the challenges it was experiencing in developing the Orbiter, finding "no feasible solutions seem to be presented" and suggesting that WhiteWater should "look into a simpler option to be more on par with the saucer." Doc. 461 at 49:13-19, 146:7-24 (citing PTX-1078). Eventually, WhiteWater began selling the Orbiter and Tailspin rides at issue in this case, which the jury found infringe the '783 patent.

### C. WhiteWater Used the Same Commonplace Patent Prosecution Techniques (Which It Maligns) in Pursuing Its Orbiter Patent

WhiteWater attempted to patent its Orbiter ride. Putting aside the fact that WhiteWater copied ProSlide's FlyingSAUCER in developing the Orbiter, the prosecution of WhiteWater's Orbiter patent employs many of the same strategies that ProSlide used, including priority claiming and continuation application practice. On June 8, 2017, well after ProSlide's PCT application had been laid open to the public, WhiteWater filed a provisional application that became the basis for its Orbiter patent family. WhiteWater also filed an international application under the PCT, and then filed multiple U.S. applications, including continuation applications. The single granted U.S. utility patent to result from WhiteWater's Orbiter patent family is U.S. 11,141,666 (hereinafter the "'666 patent"), which issued on September 22, 2021. DEX-0835. [3] WhiteWater's '666 patent lists, on its face, ProSlide's U.S. Pub. No.

[3] DEX-0835, attached hereto as Ex. C, was not offered for admission and was not admitted at trial.

2017/0106295 as a reference cited *by WhiteWater* as relevant to the '666 patent. *Id.* at (56).[4]

## III. LEGAL STANDARD

28 U.S.C. § 1927 provides that "[a]ny attorney . . . admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To justify an award of sanctions under § 1927 a court must find that three predicates apply: (1) an attorney must engage in unreasonable and vexatious conduct; (2) this conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *Secretary of Labor v. Caring First, Inc.*, 6:15-cv-1824-Orl-41GJK, Doc. 107, 2017 WL 4764350, at *2 (M.D. Fla. Oct. 20, 2017).

"[A]n attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). "For purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* For alleged false or misleading statements to rise to the level of a sanctionable offense, the conduct must

[4] Demonstrating its awareness of ProSlide's patent applications, WhiteWater, on its own initiative, submitted U.S. Pub. No. 2017/0106295 (which led to the '508 and '783 patents) to the United States Patent and Trademark office ("USPTO") in the prosecution of its own application (which led to U.S. Patent No. 11,141,666) in an Information Disclosure Statement on January 14, 2020. Ex. D.

arise from "more than mere negligence[;]" it must "grossly deviate[] from reasonable conduct." *Hyde v. Irish*, 962 F.3d 1306, 1310-11 (11th Cir. 2020).

The Court also has inherent authority to impose "sanction[s] for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (1991). "Similar to § 1927, a federal court's inherent sanctioning authority permits it to impose sanctions 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Caring First*, 2017 WL 4764350, at *2 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). However, "[i]nherent powers must be exercised with restraint and discretion." *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1224 (M.D. Fla. 2004) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

## IV. ARGUMENT

### A. ProSlide Did Not Make False and Misleading Assertions of Fact

WhiteWater's Motion fails for the simple reason that ProSlide made no false or misleading assertions of fact.

Grasping at straws, WhiteWater maligns ProSlide for repeating the basic facts established at trial and confirmed by the jury: WhiteWater infringed the '783 patent; WhiteWater was aware of ProSlide's published patent applications and issued patents, including ProSlide's PCT application which matured into the '783 patent; and the jury, in evaluating the totality of the circumstances, was entitled to make inferences and credit ProSlide's proffered evidence in concluding that WhiteWater's infringement was willful. WhiteWater's Motion falls far short of the standard to show that

ProSlide's counsel acted with objective bad faith, much less that they engaged in unreasonable and vexatious conduct.

ProSlide's positions at trial and in its motions for permanent injunction and enhanced damages were well-supported, reasonable, and in accordance with the law. In contrast, WhiteWater is now urging this Court to depart from well-established Supreme Court and Federal Circuit precedent to sanction ProSlide when it did nothing to warrant sanctions.

#### 1. WhiteWater Suggests an Artificial Siloing of the '508 and '783 Patents

It is elementary patent law that an invention can yield more than one issued patent. *See* MPEP §§ 201.02, 201.07; *see also* 35 U.S.C. §§ 120, 121, 365, 386 (laying out the statutory conditions for continuing patent applications). WhiteWater attempts to cabin certain evidence as either "referring to" the '508 patent or the '783 patent. Motion at 7. In reality, the evidence in question is restricted to neither.

WhiteWater's internal stage gate 0 document (PTX-1134) included a figure from ProSlide's *PCT application*, and photos of ProSlide's FlyingSAUCER product. It also included the text of original claim 1 that was presented in the PCT application. Contrary to WhiteWater's assertions, the issued '508 patent *does not* include this claim. Motion at 7 ("The report included a page that contained a drawing and claim language from ProSlide's application for the '508 Patent . . . ."). As commonly occurs in the course of patent prosecution, the claims were amended, and the issued claims of the '508 patent do not contain the claim appearing in PTX-1134.

Indeed, by simply considering the dates of the documents in question, WhiteWater's story that its internal stage gate 0 review (in March 2017) is constrained to the '508 patent (whose application was not published until April 2017, and finally issued in December 2019) unravels. WhiteWater cannot escape the fact that it considered and discussed ProSlide's PCT application during the development of the Looping Saucer project, and this very PCT application has the identical specification and figures as the '783 patent, which the jury found WhiteWater infringed.[5]

Additionally, WhiteWater's attempt to manufacture a distinction between the applications that became the '508 patent and the '783 patent is irrelevant to the ultimate legal issues. WhiteWater's witnesses admitted they are alerted to and review ProSlide patent applications and issued patents as they are published or issued. Doc. 461 Trial Tr. Vol. 7 (Barrera Direct) at 65:17-19; Doc. 467 Trial Tr. Vol. 11 (Briggs Direct) at 80:2-6. WhiteWater also cited ProSlide's issued patents and published patent applications in the prosecution of its own patent applications, demonstrating its awareness of ProSlide's patent families. *See supra* at II.C.

WhiteWater cannot dispute its awareness of ProSlide's PCT application. So, it tries to frame this evidence as being limited to the '508 patent and argues that it has no connection to the '783 patent. Motion at 11-14. But there is no such distinction. The

[5] The continuation application that would become the '783 patent *did* contain a different set of claims, as is required by the USPTO. MPEP § 201.07 ("At any time before the patenting, abandonment, or termination of proceedings on an earlier application, an applicant may have recourse to filing a continuation application . . . in order to introduce into the application a ***new set of claims*** . . .") (emphasis added).

facts are straightforward: WhiteWater was aware of ProSlide's FlyingSAUCER patent family. That family began with the provisional application filed June 13, 2014. The first application became public when ProSlide's PCT application published on December 17, 2015. WhiteWater initially criticized ProSlide's FlyingSAUCER for being a waste of fiberglass but then later acknowledged its success and tried to replicate it. WhiteWater was aware of ProSlide's patent applications for the FlyingSAUCER, including at the time when it developed the Orbiter and Tailspin. WhiteWater eventually copied ProSlide's FlyingSAUCER technology and infringed the '783 patent. It continued selling its infringing products throughout the course of this litigation, long after it had received notice of the '783 patent from Patsnap and from ProSlide. Doc. 461 Trial Tr. Vol. 8 (Barrera Direct) at 20:9-16.

#### 2. Evidence of WhiteWater's Copying Is Relevant to Multiple Issues

The evidence of copying discussed above is relevant to multiple issues in the case, including willfulness, injunctive relief, enhanced damages, and non-obviousness of the '783 patent.

First, copying indicates non-obviousness. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1327 (Fed. Cir. 2004) (copying the invention is objective evidence of non-obviousness). Interestingly, WhiteWater does not refute the evidence of WhiteWater's copying in the context of the non-obviousness of the '783 patent.

Next, as explained in ProSlide's motion for a permanent injunction, one of the factors the Court considers is the balance of the hardships. Doc. 507 at 22-24. In

analyzing this factor, the Court need not consider whether the infringer's expenses in dealing with the consequences of its infringement should shield the infringer from injunctive relief. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010). This is because "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). There is no requirement that a patentee show actual knowledge of an asserted patent *at the time of development* of the infringing product, as WhiteWater seems to imply. ProSlide's motion for permanent injunction simply shows that WhiteWater appreciated the business risks of patent infringement or litigation in view of ProSlide's FlyingSAUCER patent family, demonstrating culpability, and tipping the balance of the hardships in favor of granting permanent injunctive relief.

Further, as explained in ProSlide's motion for enhanced damages, one of the *Read* factors that the Court considers in determining whether to increase the damages award is deliberate copying. Doc. 508 at 2-5. Once again, there is no requirement that the patentee show the infringer had actual knowledge of the asserted patent at the time it began developing the infringing product. *See, e.g.*, *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 n.7 (Fed. Cir. 1992) (instructing that the factor of "whether the infringer deliberately copied the ideas or design of another" encompasses "copying the commercial embodiment, not merely the elements of a patent claim"); *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 198 F. Supp. 3d 1343, 1350 (S.D. Fla. Jul. 27, 2016) (quoting the same); *Idenix Pharms. LLC v. Gilead Sciences, Inc.*, 271 F. Supp. 3d

694, 699 (D. Del. Sep. 22, 2017) (finding deliberate copying weighed in favor of enhancement when defendant "reviewed [plaintiff]'s patent *application*") (emphasis added). ProSlide put forth ample evidence to demonstrate that WhiteWater copied the FlyingSAUCER and such copying was deliberate. *See* Doc. 508 at 3-5.

The evidence discussed above is also a relevant factor in the question of willfulness, which the Federal Circuit has held is a totality-of-the-circumstances test. *WCM Indus., Inc. v. IPS Corp.*, 721 Fed. App'x 959, 970 (Fed. Cir. 2018) (reaffirming that the infringer's intent "must be inferred *from all the circumstances*" and casting doubt on the premise that "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it") (emphasis in original). Doing all it can to negate the jury's decision, WhiteWater asserts that "the 2017 documents cannot possibly support a finding of willfulness as to the '783 Patent." Motion at 12. Not so. The Federal Circuit has specifically considered the argument WhiteWater raises and refused to endorse it. *WCM*, 721 Fed. App'x at 970-71 (discussed further *infra*).

**B. WhiteWater's Mistaken View of the Caselaw**

The primary legal authority that WhiteWater provides in its Motion is a non-precedential, unreported opinion, which it relies upon for the proposition that "a mere patent application cannot support a finding of willfulness." Motion at 14 (citing *Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, 2023 WL 5219773 (Fed. Cir. Aug. 15, 2023)). *Fleet Engineers*, in turn, relies on *State Industries*, a case decided in 1985 (before the Patent Office began publishing patent applications), which reversed a finding of willfulness when a patentee "manipulat[ed] its secret pending patent application to cover the

functionally competitive structure it did not think of . . . ." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235 (Fed. Cir. 1985). WhiteWater neglects to mention that the Federal Circuit has explicitly cast doubt upon the proposition it advances.

The unsigned panel opinion in *Fleet Engineers* included a quote from *State Industries* that "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it . . . . [A]n application is no guarantee any patent will issue . . . . What scope of claims in patents that do issue will be is something totally unforeseeable." 2023 WL 5219773, at *7 (alteration in original). But the Federal Circuit "has already held that *State Industries* does not establish a per se rule" that to willfully infringe, a patent must have already existed and defendant must have knowledge of it. *WCM Indus., Inc. v. IPS Corp.*, 721 Fed. App'x 959, 970 (Fed. Cir. 2018). Rather, the Federal Circuit confirmed that *State Industries* "is in harmony with our prior and subsequent case law, which looks to the 'totality of the circumstances presented in the case.'" *Id.* (quoting *Shiley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986); *see also Halo Elecs, Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). The Federal Circuit also pointed out that for applications filed on or after November 29, 2000, the prior concerns referenced in *State Industries*—that defendant was in the dark about plaintiff's patent application prosecution activity—are "no longer valid when patent applications and realtime prosecution activity are published." *WCM*, 721 Fed. App'x at 970 n.4.

District courts around the country regularly follow the "totality of the circumstances" test when allowing the factfinder to decide the question of willfulness,

taking note of the Federal Circuit's disapproval of the specific proposition WhiteWater relies on. *See, e.g.*, *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609-10 (D. Mass. Aug. 30, 2018) ("[T]he Federal Circuit has cast significant doubt on that authority" that general knowledge of a patent portfolio, without more, is not sufficient to support willfulness); *Copan Italia S.p.A. v. Puritan Med. Prods. Co.*, 2018 WL 5891742, at *3 (D. Me. Nov. 9, 2018) (denying motion to dismiss willfulness claim when plaintiff only alleged defendant's knowledge of patent *applications*); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 334-35 (S.D.N.Y. Aug. 28, 2019) (denying JMOL of no willfulness when evidence was presented that defendant knew of the *parent* patent to the asserted patent); *Illumina, Inc. v. BGI Genomics Co., Ltd.*, 2022 WL 899421, at *14 (N.D. Cal. Mar. 27, 2022) (denying JMOL of no willfulness and finding "knowledge of the specific patents is not required to support a finding of willful infringement").

Moreover, like the Federal Circuit found in *WCM*, WhiteWater does not dispute its awareness of ProSlide's applications that led to the '783 patent, nor does WhiteWater deny that its subscription service, Patsnap, alerts it to ProSlide's issued patents and applications as they are published or issued. *WCM*, 721 Fed. App'x at 970-71. Thus, *Fleet Engineers* is further inapplicable because, unlike in *State Industries*, ProSlide has provided sufficient evidence for a reasonable jury to conclude that WhiteWater knew of ProSlide's patents "as they issued, if not earlier." *Id.*; *see also* Doc. 467 at 26:22-27:18 (ProSlide's response to WhiteWater's *ore tenus* motion for JMOL

of no willfulness) ("On willfulness, it's a 'totality of the circumstances' test. We put on a wealth of evidence with respect to the fact that they subscribed to Patsnap; they get immediate access to our patents and applications . . . .").

The jury heard all the evidence of WhiteWater's awareness of the applications that led to the '783 patent, WhiteWater's subscription service that alerted it to ProSlide's patents as they issued, and WhiteWater's copying. The jury was entitled to credit this evidence and, further, make inferences in concluding that WhiteWater's infringement of the '783 patent was willful. Thus, ProSlide's statements in its motion for permanent injunction (Doc. 507) and motion for enhanced damages (Doc. 508) are accurate. WhiteWater attempts to discard the jury's determinations by manufacturing a story that the jury was somehow misled.

### C. WhiteWater's Incorrect Assertions and Relitigation of Decided Issues

#### 1. The '783 Patent Was Not Filed as "an Entirely New" Application as WhiteWater Claims

WhiteWater asserts that "[t]he 2014 and 2015 applications did not 'mature into the '783 Patent.'" Motion at 13. According to WhiteWater, both the provisional application and the PCT application "were granted as a patent (the '508) that the Court found invalid." *Id.* WhiteWater again misunderstands basic patent application procedure. Neither the provisional application nor the PCT application were ever "granted" as patents. Indeed, provisional applications are not even examined by the

Patent Office.[6] Further, international applications under the PCT are never "granted" as patents.[7]

WhiteWater goes on to assert that ProSlide "filed an entirely new application, with entirely new claims, that resulted in the '783 Patent asserted at trial." Motion at 13. As the Court heard repeatedly throughout the proceedings, however, the specifications of the '783 patent and the '508 patent (as well as the PCT application) are identical. Doc. 433 Pretrial Conf. Hr'g Tr. (10/23/23) at 20:22-21:5; Doc. 447 Trial Tr. Vol. 1 at 33:5-17; Doc. 457 Trial Tr. Vol. 6 at 155:10-11. This includes all the figures, the figure descriptions, and other narrative descriptions. It is true that the *claims* of the '783 patent application were different from those of the issued '508 patent, otherwise, the '783 patent application would not be a proper continuation application. MPEP § 201.07. Thus, the application that became the '783 patent was not "an entirely new application" as WhiteWater asserts.[8]

### 2. WhiteWater's Recycled Written Description/Priority Arguments

As is characteristic of WhiteWater's conduct throughout this litigation, it continues to raise arguments on irrelevant issues or issues the Court has already

[6] *See* https://www.uspto.gov/learning-and-resources/newsletter/inventors-eye/provisional-patent-application-it-me; MPEP § 201.04.III; *Martin v. United States*, 99 Fed. Cl. 627, 632-33 (Fed. Cl. 2011) ("Provisional applications are not examined on their merits.").

[7] *See* https://www.wipo.int/pct/en/faqs/faqs.html ("The granting of patents remains under the control of the national or regional patent Offices in what is called the "national phase.").

[8] With no evidence whatsoever, WhiteWater accuses ProSlide of improperly filing the '783 patent application as a continuation. Motion at 14. But the Patent Office already accepted ProSlide's priority claim for the '783 patent. WhiteWater never pled this supposed defense, even though it attempted (and failed) to amend its Answer to add a counterclaim for inequitable conduct for ProSlide's prosecution of the '508 and '783 patents on different grounds. *See* Doc. 268.

decided. WhiteWater's argument that "the claims before the jury—Nos. 9, 20, and 23 of the '783 Patent—appeared nowhere in the '508 Patent or the applications preceding it" (Motion at 13) is a nonstarter. First of all, as explained above, whether WhiteWater had actual notice of the specific claim language of the '783 patent at the time it began development of its "Looping Saucer" is irrelevant to the statements at issue in ProSlide's injunction and enhancement motions. *See supra* at 11-12. To the extent WhiteWater's argument is that it was improper for the effective filing date of '783 patent, including the asserted claims, to be "the 2014 date" (Motion at 14), that ship has sailed.

The time for WhiteWater to raise a challenge to the sufficiency of support for the asserted claims of the '783 patent was at summary judgment. Or, to the extent WhiteWater believed there to be a dispute of fact, WhiteWater might have continued to raise the issue at trial. But WhiteWater pursued neither avenue. WhiteWater did not move for summary judgment of lack of written description (among its slew of other pretrial motions), and WhiteWater abandoned its invalidity ground under §112 of lack of written description for the '783 patent by failing to present any evidence for this theory at trial. Accordingly, a question regarding the validity of asserted claims of the '783 patent on the ground of written description was not added to the verdict form. *See* Doc. 494 Trial Tr. Vol. 16 (ProSlide arguing in support of its *ore tenus* motion for JMOL on the issue of written description, WhiteWater "simply presented no evidence on that. So that can't go to the jury because no reasonable juror could come to that conclusion. We're still entitled to judgment as a matter of law on those issues.").

Ultimately, the jury found that WhiteWater did not prove the '783 patent is invalid. Doc. 500. Unsurprisingly, WhiteWater wants a do-over of its failed attempt to invalidate the '783 patent. But a motion for sanctions is not the proper vehicle to request such relief.

Indeed, on the issue of whether the '783 patent is entitled to claim priority to the provisional application filing date of June 13, 2014, the Court has already decided this issue in ProSlide's favor. The Court heard the parties' arguments, including the specific argument that WhiteWater raises now, Doc. 494 at 53:1-56:10, 170:8-181:1, and found that the effective filing date of the '783 patent is June 13, 2014. Doc. 495 Trial Tr. Vol. 17 at 23:15-16. Thus, the Court has already found that the '783 patent is supported by the provisional application and is entitled to the effective filing date of June 13, 2014. WhiteWater, in yet another attempt to circumvent the page limits on dispositive motions, used this Motion to present additional arguments it should have reserved for a JMOL motion.

### 3. WhiteWater's Recycled Motion *in Limine* Argument

WhiteWater opposed ProSlide MIL #6 to preclude the parties from referencing their streamlining efforts and the Court's summary judgment rulings. Docs. 358, 389. WhiteWater argued that the jury would have to "review some of the dismissed claims [of the '508 patent] that are intertwined with the remaining claims." Doc. 389 at 14. The Court rejected this argument and granted ProSlide's MIL #6. Doc. 443 Final Pretrial Conf. Hr'g Tr. (10/26/23) at 9:19-23 ("Defendant is strictly prohibited from weaponizing discovery disputes or efforts to streamline, and is further prohibited from

using the Court's summary judgment rulings to impugn the Plaintiff and/or inflame the jury."). But WhiteWater refused to accept this result. Repeatedly throughout trial, WhiteWater attempted to bring in the '508 patent, and over and over, the Court prohibited WhiteWater from injecting irrelevant issues into the case. *See, e.g.*, Doc. 448 Trial Tr. Vol. 2 at 89:15-90:11 ("You should not have said that '508 patent on opening statement."); Doc. 450 Trial Tr. Vol. 3 at 9:25-10:6; Doc. 457 at 5:7-13.

Despite WhiteWater's urging, the Court did not find that the '508 patent was "intertwined" with the analysis of limitations of the '783 patent. *See, e.g.*, Doc. 448 Trial Tr. Vol. 2 at 90:17-91:9; Doc. 457 at 153:15-155:12; Doc. 462 Trial Tr. Vol. 9 at 35:10-36:14. WhiteWater's argument that limitations of the '783 patent claims "refer[] back" to the claims of the '508 patent (Doc. 457 at 153:15-154:20) turned out to be nothing more than a distraction. WhiteWater cannot continue to press this theory that the Court repeatedly rebuked.

## V. CONCLUSION

Not only does WhiteWater's Motion fall drastically short of the legal standard for sanctions, as explained above, it further demonstrates ProSlide's entitlement to its fees. ProSlide easily satisfies the three-factor test for entitlement to fees under § 1927.[9] *Caring First*, 2017 WL 4764350, at *2. For the foregoing reasons, ProSlide respectfully requests that the Court deny WhiteWater's Motion and award ProSlide its fees.

[9] ProSlide respectfully requests that the Court consider this request for fees in responding to WhiteWater's baseless Sanctions motion as an addendum to ProSlide's motion for attorneys' fees under § 285. Doc. 535. WhiteWater's counsel engaged in unreasonable and vexatious conduct by filing this Motion, which multiplied the proceedings, requiring ProSlide and the Court to devote resources to address it. WhiteWater should be sanctioned at least in the amount of costs occasioned by the filing of its Motion.

Dated: December 28, 2023

Respectfully submitted,

*/s/ James R. Barney*

James R. Barney (*pro hac vice*)
Elizabeth D. Ferrill (*pro hac vice*)
David C. Reese (*pro hac vice*)
Sonja W. Sahlsten, Florida Bar No. 0119797
Anthony J. Berlenbach (*pro hac vice*)
Ryan T. Davies (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: 202-408-4000
Email: james.barney@finnegan.com
Email: elizabeth.ferrill@finnegan.com
Email: david.reese@finnegan.com
Email: sonja.sahlsten@finnegan.com
Email: anthony.berlenbach@finnegan.com
Email: ryan.davies@finnegan.com

Dustin Mauser-Claassen
Florida Bar No. 0119289
KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
25 E. Pine St.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
Email: dmauser@kbzwlaw.com

*Counsel for Plaintiff ProSlide Technology, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2023, I caused the foregoing **Plaintiff's Opposition to Defendant's Motion for Sanctions** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Dustin Mauser-Claassen*
Dustin Mauser-Claassen
Florida Bar No. 0119289